## SERAPIO SANCHEZ V. THE STATE.

No. 22856. Delivered May 17, 1944.
Rehearing Denied June 21, 1944.

438

The opinion states the case.

*A. L. Carlton*, of El Paso, for appellant.

*Roy D. Jackson*, District Attorney, and *Gill L. Newsom*, Assistant District Attorney, both of El Paso, and *Ernest S. Goens*, State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of forty years.

Appellant's first contention is that the trial court erred in declining to sustain his motion to quash the indictment based on the ground of alleged race discrimination in the selection of the grand jury which returned the indictment in this case. He alleged that he was of Mexican descent and belonged to the Mexican race; that the jury commissioners, in the selection of grand jurors, deliberately and designedly discriminated against the members of his race in that they intentionally declined to select any Mexicans as members of the grand jury notwithstanding there were numerous American citizens of Mexican or Spanish descent in Hudspeth County qualified to serve as grand jurors; that this practice of intentionally excluding American citizens of Mexican or Spanish descent from grand jury service has existed and continued from the year 1922 up to the present time (1943); that the act of the jury commissioners as aforesaid was a denial of the equal protection of the law guaranteed to him by the Fourteenth amendment to the Constitution of the United States, etc.

The testimony relative to the action of the jury commissioners in selecting the grand jury which returned the indictment against him shows that they did not intentionally or designedly

fail or refuse to select any member of Mexican or Spanish descent; that they selected men whom they considered best qualified for grand jury service; that there were a great number of persons of Mexican or Spanish descent in Hudspeth County who were not citizens, quite a number who could not read, write or speak English, and only a few had paid a poll tax; that approximately forty or fifty per cent of the population of Hudspeth County were of Mexican or Spanish descent. There were a few who could read, write and speak English, who had paid a poll tax but some of them were in the Army. The poll tax list for the year 1942 of Precinct No. 1 showed 28 persons of Mexican or Spanish descent, some of whom were women. The list of Precinct No. 2 disclosed the names of 23 persons. Precint No. 3 showed none, and the same is true of Precinct No. 4. This showed a sum total of 51, some of whom were women.

Article 339, C. C. P., provides as follows:

"No person shall be selected or serve as a grand juror who does not possess the following qualifications:

"1. He must be a citizen of the State, and of the county in which he is to serve, and qualified under the Constitution and laws to vote in said county; but, whenever it shall be made to appear to the court that the requisite number of jurors who have paid their poll taxes can not be found within the county, the court shall not regard the payment of poll taxes as a qualification for service as a juror.

"2. He must be a freeholder within the State, or a householder within the county.

"3. He must be of sound mind and good moral character.

"4. He must be able to read and write.

"5. He must not have been convicted of any felony.

"6. He must not be under indictment or other legal accusation for theft or of any felony."

These mandatory provisions of the statute, which are not deemed to be unfair, must be observed by the jury commission in the selection of the prospective grand jurors, and unless a person possesses the required qualifications he is not a competent and qualified grand juror.

In filing his motion to quash the indictment, appellant assumed the burden of sustaining his allegations therein by proof.

The trial court patiently heard all the testimony relative to the question presented and decided it adversely to the appellant's contention. We do not feel that under the evidence adduced upon the hearing thereof that we would be authorized or justified in setting aside the conclusion reached by the court on the facts as presented by the record.

Appellant's next complaint relates to the trial court's action in overruling his motion for a change of venue. It was alleged in the motion that there existed such prejudice against American citizens of Mexican or Spanish descent that a person of such nationality could not get a fair and impartial trial in Hudspeth County; that he was a member of the Mexican race; and that American citizens of Mexican or Spanish descent are not called to serve as grand and petit jurors; that no person of Mexican or Spanish descent had been called to serve as jurors for a period of more than six years. It will be noted that there is no allegation in the application that there were citizens of Mexican or Spanish descent who were qualified under the law to serve either as grand or petit jurors. However, the allegation of the existence of prejudice is sufficient, if supported by proof, to have authorized a change of venue. The evidence relative to this issue was pro and con. Three witnesses testified for the appellant that there existed in Hudspeth County prejudice against the appellant; that by some members of the jury panel the defendant could get a fair and impartial trial but that by others he could not; that they heard the case discussed and that the discussion had not all been on one side; that part of them had been favorable to the defendant and part had been unfavorable to him. Two witnesses for the State testified that in their opinion there was no such prejudice existing against American citizens of Mexican or Spanish descent as to prevent appellant from getting a fair and impartial trial; that in their opinion he could get such a trial in Hudspeth County. The bill relating to this matter is qualified by the trial court who states that in the selection of the jury appellant only exhausted ten of his fifteen peremptory challenges.

It will thus be noted that the testimony adduced on the motion presented conflicting theories. It is the rule in this State that if conflicting theories as to prejudice arise from the evidence, the trial court has the discretion of adopting either theory, it being his duty to weigh the evidence. A judgment denying the application will not be disturbed unless it be made to appear that the trial court abused his discretion with respect thereto. See Davis v. State, 120 Tex. Cr. R. 114; Willis v. State,

81 S. W. (2d) 693; Garza v. State, 117 S. W. (2d) 429. We are unable to reach the conclusion that the record reflects an abuse of discretion on the part of the trial court. We therefore overrule his contention.

Appellant next complains of the court's action in declining to peremptorily instruct the jury to acquit him on the ground that the evidence showed that appellant acted in defense of himself and his father. We are unable to agree with him. The evidence introduced by the State, briefly stated, shows that Mariano Sanchez, the father of appellant, was employed by Bill Hargrove as a farm hand and appellant was also in the employ of Hargrove. On Sunday afternoon Hargrove drove out to his farm and learned that the father of appellant was not there to go to irrigating the crop. Hargrove drove to the town of Acala and saw Mariano leaning against the wall of a store. He approached Mariano and said to him: "Come on, and let's go to work." Mariano replied that he did not want to work. Hargrove then got out of his car and slapped him. At this juncture appellant stepped in between his father and Hargrove and asked Hargrove not to hit his father any more. Hargrove complied with the request of appellant and advised him to take his father home as he was drunk and get him away from town. Hargrove then returned to his automobile, and as he was in the act of driving away, the deceased (George A. Cox) came from a cafe and inquired of Hargrove if he needed any help. While this conversation was going on, Mariano walked back and forth with an empty beer bottle in his hand, and when he reached a point near the automobile the deceased struck Mariano and knocked him down. Thereupon appellant struck the deceased with a knife. The deceased, in turn, struck appellant and knocked him down with his fist. Appellant immediately arose and stabbed the deceased again. At this juncture, other parties interfered, and the deceased returned to the cafe, where he fell to the floor and died about the time they arrived with him at the hospital. Some of the State's witnesses described the knife used by appellant as a dirk with a blade about five or six inches in length, with a sharp double edge.

Appellant's evidence does not materially differ from that of the State except that the knife which he used had a blade of about two inches long with a little chain at one end thereof. He testified that he stabbed the deceased in his own self-defense and in the defense of his father; Mariano. He also proved that he was nineteen years of age; that he was practically blind and

had been discharged from the military service on the ground of mental deficiency.

It will be noted from the foregoing brief statement of the evidence that it raised an issue of fact as to whether or not appellant immediately resorted to the use of a deadly weapon or an instrument calculated to produce death or serious bodily injury without first resorting to other means at hand to repel the aggression. Article 1224, P. C., provides as follows:

"Homicide is justifiable also in the protection of the person or property against any other unlawful and violent attack besides those mentioned, and in such cases all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack, and the person interfering in such case in behalf of the party about to be injured is not justified in killing the aggressor unless the life or person of the injured party is in peril by reason of such attack upon his property."

It is to be observed that the nature of the assault against which the defense is made, and the means used, as well as the character of the resistance made, are matters to be considered by the jury in determining the grade of the offense, if any, and the extent of the punishment to be meted out. See Schutz v. State, 96 Tex. Cr. R. 287; Fambro v. State, 142 Tex. Cr. R. 473; Hathcock v. State, 103 Tex. Cr. R. 518; Prater v. State, 142 Tex. Cr. R. 626.

By a bill of exception appellant complains because the court declined to peremptorily instruct the jury to acquit him on the plea of insanity. There is no merit in this contention. It is true that one doctor testified that appellant had the mind of a five-year-old child, but another doctor testified that while he was discharged from army service by reason of mental deficiency, still he did know the right from the wrong, etc. Under such state of facts it was entirely a question for the jury to determine.

There are two bills of exception in the record complaining of certain remarks by the District Attorney in his argument to the jury. These bills are deficient in that they fail to show that such argument was not provoked or invited by appellant's counsel. See Richardson v. State, 99 Tex. Cr. R. 514; Winslow v. State, 50 Tex. Cr. Rep. 465; Gonzales v. State, 88 Tex. Cr. R. 248; Fowler v. State, 89 Tex. Cr. R. 623; Clowers v. State, 171 S. W. (2d) 143; and Fuller v. State, (No. 22,852), not yet re-

ported. (Page 250 of this volume). We think, however, that the argument was a reasonable deduction from the evidence.

All other matters complained of have been examined by us and are deemed to be without merit.

From what we have said it follows that the judgment of the trial court should be affirmed, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant, a Mexican, insists that the long, continued and uninterrupted failure to call members of the Mexican or Spanish nationalities for jury service in Hudspeth County constitutes a denial to him of equal protection under the 14th Amendment to the Federal Constitution, and that we erred in reaching a contrary conclusion. In support of his contention, appellant relies upon Norris v. State of Alabama, 294 U. S. 587, 79 L. Ed. 1074, 55 S. Ct. 579; Smith v. State of Texas, 311 U. S. 128, 85 L. Ed. 84, 61 S. Ct. 164; and Hill v. State, of Texas, 316 U. S. 400, 86 L. Ed. 1559, 62 S. Ct. 1159, and authorities therein cited.

In the case of Norris v. State of Alabama, supra, said court announced the rule contended by appellant as being applicable to and controlling members of the Negro race. We have discovered no case wherein that court has applied the same rule to members of different nationalities.

In the absence of a holding by the Supreme Court of the United States that nationality and race bear the same relation, within the meaning of the constitutional provision mentioned, we shall continue to hold that the statute law of this State furnishes the guide for the selection of juries in this State, and that, in the absence of proof showing express discrimination by administrators of the law; a jury so selected in accordance therewith is valid.

We remain convinced of the correctness of our original conclusion, and the appellant's motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.