## REYES CAVAZOS v. THE STATE.

No. 23044. Delivered February 28, 1945.
Rehearing Denied April 25, 1945.

The opinion states the case.

*N. M. Crain* and *Tom Cheatham,* both of Cuero, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of twenty years.

Appellant, his brother, Hipolito Cavazos, Jr., and Ismael Flores, were jointly indicted, charged with the murder of Alfonso Orosco. A severance was granted and appellant alone was put on trial.

The evidence adduced by the State and that of appellant is very much in conflict. The real cause which prompted the killing is not disclosed by the record. However, the State's evidence shows that on the night of February 12, 1944, the deceased and his brother, Roque Orosco, attended a dance at Zapata's Dance Hall, located in the town of Cuero. Shortly after midnight, appellant, accompanied by his father, Hipolito Cavazos, Sr., his brother, Hipolito Cavazos, Jr., Ismael Flores and Joe Tijerina, came to where the dance was in progress; that soon after appellant and Flores had entered the hall, the deceased came out, whereupon he was joined by his brother and they started towards their automobile for the purpose of going home. Appellant, Flores, Hipolito Cavazos, Jr., and his father followed them and prevented them from entering the automobile. The deceased (Alfonso) then began backing up the main street with the four men advancing upon him. They knocked him down and

stabbed him to death. While he lay upon the ground mortally wounded, he raised his hand and called three times for his brother, Roque.

There is sufficient evidence in the record to show that appellant, his father, his brother, and his brother-in-law (Flores) all took part in inflicting the wounds upon the deceased.

Appellant testified in his own behalf and admitted going to the dance hall with the parties just mentioned, but denied that he entered the hall; that he remained on the outside; that soon after they arrived at the dance, quite a number of men came out and he noticed Alfonso Orosco and his brother go to Alfonso's car but they said nothing; that when Alfonso got to his car he took something from it and remarked: "I will kill you s-- of a b---," whereupon he (appellant) asked him: "What is the matter," and told Alfonso to put his gun away; that at this point of the proceeding Alfonso fired; that he (appellant) then advanced toward Alfonso and endeavored to kick the pistol out of his hand when Alfonso shot him in the leg; that he then rushed at appellant, grabbed his hand, took the pistol away from him and struck him on the head with it; that after being struck on the head Alfonso ran some ten or twelve feet, when some other parties began fighting him; that he (appellant) took no part therein; that he did not cut or stab him; that after he had struck Alfonso on the head with the pistol, he then threw it at Roque, the brother of Alfonso, striking him on the back of the head; that he did not go to where the others were fighting Alfonso; that after the fight was over he (appellant) was carried to a hospital for medical treatment.

The deceased was later picked up by an undertaker and prepared for burial. An examination of his body disclosed eight wounds: three in his back, three in the front part of his body, one on his neck, and one on his leg above the knee. The wounds appeared to have been made with different knives or sharp instruments. All the wounds in the front part of his body and two in his back went to the cavity. His hands were also cut on the inside.

The foregoing is a brief summary of the evidence as contained in a voluminous record and is deemed sufficient for a clear understanding of the questions to be hereinafter discussed.

Appellant brings forward eight complaints, some of which relate to the admission of evidence and some relate to the court's

charge and to the refusal to give special requested charges, while others relate to certain remarks made by the prosecuting attorneys. We will discuss these in the order in which they are presented.

By Bill of Exception No. 1 he complains of the following testimony given by Lucas Fernandez at the instance of the State: That he (witness) and Hipolito Cavazos, Jr., were about a block away from the place where the deceased was killed; that at that time he asked Hipolitio who Reyes was to which he replied that Reyes was his brother and remarked: "Do you want something?" and put his hand on his hip but he did not see any pistol. Then he (witness) inquired of Roque (brother of deceased) as to what was the matter with him as he had blood on his head and neck, to which Roque replied that Reyes (defendant) had hit him. The objection urged to this testimony was that these matters occurred in the absence of the defendant and about a block away from the scene of the killing, after the fight had ceased and the deceased had been killed; and for the further reason that it was immaterial and prejudicial; that it was not admissible on the ground of the existence of a conspiracy, or on the theory of acting together as principals; that the actors had separated before the acts and conversation between Hipolito Cavazos, Jr., and the witness (Fernandez) took place. The bill is qualified by the trial court who states in his qualification thereof that the acts and declarations occurred at a place not over a block from where the cutting and shooting in question took place, and in the immediate vicinity of where the defendant hit Roque with a pistol; that said conversation took place before the fight had ended and was a part of the res gestae of the killing; that Hipolito Cavazos, Jr., a witness for the defendant, on cross-examination, testified without objection to the events and conversations referred to in this bill. Appellant accepted the bill with the qualification and is bound thereby. See Ballew v. State, 141 S. W. (2d) 654; Bird v. State, 147 S. W. (2d) 500; Murphy v. State, 141 S. W. (2d) 634.

The State's evidence shows that four men were acting together in the assault on the deceased and his brother, Roque, and since the fight had not ceased and the killing had not been completed at the time of the conversation, the acts and declarations of each of the participants became admissible in evidence against each and all of them as a part of the res gestae. In view of the court's qualification of the bill, we see no error reflected therein. That Hipolito Cavazos, Jr., was a participant in the fatal assault upon the deceased is shown by the State's evidence.

In the case of White v. State, 60 Tex. Cr. R. 563, Judge Davidson announced the following rule:

"To us it seems too plain to admit of argument, that when two or more are found acting together with an unlawful intent in the commission of an offense, the common design and acting together makes them ipso facto conspirators—endows them as a body with the attribute of individuality," etc.

Consequently, as long as the object of the common design had not been fully accomplished and the parties had not separated, the acts and declarations of one would be admissible against each and all of the others.

In the case of Weathersby v. State, 29 Tex. Cr. App. 278 (307), this court said:

"Whatever is said by any party to the transaction at the time of the transaction is a part of the transaction itself, and is admissible in evidence as res gestae."

See also Eggleston v. State, 59 Tex. Cr. R. 542 (551) ; White v. State, 60 Tex. Cr. R. 559.

There is testimony from other sources that Reyes (appellant) struck Roque on the back of the head with a pistol and that Reyes was a brother of Hipolito Cavazos, Jr. The additional testimony that Hipolito Cavazos, Jr., inquired of the witness (Fernandez), "Do you want something?" and placed his hand on his hip is not, in our opinion, of such prejudicial nature as would require a reversal of this case.

It appears from Bill of Exception No. 2 that the District Attorney in his closing argument to the jury said:

"If you stay with us and give us a little help and round up those fellows, that old man Hipolito will be indicted."

Appellant objected to the remark on the ground that the same was highly improper, inflammatory and prejudicial, and requested the court to instruct the jury not to consider it. This bill is deficient in that it fails to negative the fact that the argument was not provoked nor invited by him. See Sanchez v. State,181 S. W. (2d) 87; Fuller v. State, 180 S. W. (2d) 361; Taylor v. State, 184 S. W. (2d) 621. However, the court qualified the bill and in his qualification states that said argument was made in reply to that of defendant's counsel in which he

said: "The State's testimony shows that Hipolito Cavazos, Sr., stabbed the deceased a number of times, yet he had not been indicted by the grand jury." That in connection with the argument complained of the District Attorney remarked that Pedro Dias did not testify before the grand jury and they did not have the benefit of his testimony.

By Bill of Exception No. 3 appellant complains of the action of the trial court in declining to give his special requested charge on the law of principals. We have considered the court's charge on the subject of principals and are of the opinion that the same is fully covered in Paragraphs 9, 10 and 11 thereof..

By Bill No. 4 he complains because the trial court declined to give his Requested Charge No. 2 to the effect that if the jury should believe from the evidence that the defendant struck the deceased on the head with a pistol, and further believed that thereafter the deceased was struck by some one other than the defendant, which attack resulted in the death of the deceased, then they could not convict him unless they believed beyond a reasonable doubt that the defendant participated in, aided or abetted in the attack which resulted in the death of the deceased. It appears from the court's charge that after he had instructed the jury on the law of principals and who constitutd principals' he further instructed them relative to the law of murder, with and without malice, and also aggravated assault. In his charge relative to the law of murder, the court instructed the jury that if they believed from the evidence, of if they had a reasonable doubt thereof, that some one other than the defendant killed the deceased, and that the defendant was not acting with them as a principal, as the law of principals has been defined in Paragraphs 9 and 10 of the main charge, then they could not convict the defendant of murder. In Paragraph 10 of the charge, the court instructed the jury that if another did in fact commit the offense charged and the defendant did not know of the unlawful intent or did not aid by acts or encourage by words or gestures the party committing the offense, he would not be a principal. To have given the requested charge would have been an instruction to the jury to acquit the defendant, notwithstanding the fact that he may have unlawfully assaulted the deceased with a pistol. Regardless of whether he knew of the unlawful intent of other parties in making the attack upon the deceased, this would have been an improper instruction. However, the court, in his charge on aggravated assault, definitely charged the jury that if they believed from the evidence that the defendant unlawfully committed the assault upon the deceased, not in defense of himself or Ismael Flores, against an unlawful attack,

real or apparent, and without any intent to kill or commit an assault upon the person of Alfonso Orosco, or if they further believed from the evidence beyond a reasonable doubt that serious bodily injury was thereby inflicted upon the body of Alfonso Orosco, they should find the defendant guilty of aggravated assault and battery and so state in their verdict. The court also, in connection therewith, instructed the jury that the law of self-defense and the defense of another were applicable to the charge of aggravated assault and battery. It is our opinion that the court fairly and adequately guarded the rights of the defendant under the law and the facts of this case. We therefore overrule his contention.

Bill No. 5 relates to the appellant's objections to the court's charge, none of which, in our opinion, present error since the court's main charge properly and correctly instructed the jury as to all the issues raised by the evidence.

By Bill of Exception No. 6 appellant complains of the action of the trial court in overruling his motion for new trial. In this we fail to perceive any error.

Bills of Exception Nos. 7 and 8 complain of the closing argument of the District Attorney. These bills are qualified and as thus qualified fail to reflect any error. In qualifying Bill No. 7 the court states that the testimony raised the issue as to whether or not Hipolito Cavazos, Sr., had discussed with others prior to taking the stand the testimony which he had given in the grand-jury room and that the District Attorney's argument with reference to the same was legitimate. Bill No. 8 is also qualified and shows that the argument of the District Attorney was in reply to that of defense counsel.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON APPELLANT'S MOTION FOR REHEARING.

BEAUCHAMP, Judge.

The appellant's motion for rehearing and the very able oral argument in support thereof present the contention that we should have sustained his Bill of Exception Number 2. The original opinion correctly discusses and disposes of the bill.

It is further argued, however, that the language of the District Attorney constituted an offer to barter and trade away the liberty of appellant to the jury for the promised service of the District Attorney in bringing about the prosecution of the old man Hipolito. We are unable to find in this statement any element of a barter and trade. It is nothing more than the statement of a District Attorney as to what he would do about a matter in which the jury was not the least concerned, so far as this record discloses. They had no interest to trade and it is inconceivable that it could under any circumstances have had any influence on the jury. Had there been error, as viewed by appellant, it was cured by the court's instruction as further shown by his qualification in the following language:

"The Court: 'That portion of the argument of the District Attorney with reference to the use of "that old man Hipolito will be indicted" will be stricken out of the record.'

"Mr. Crain: 'Note our exception.'

"The Court: 'The objection to that portion of it is sustained.'

"Mr. Crain: 'We would like to have the Court instruct the jury to disregard that argument.'

"The Court: (addressing the jury) 'You will disregard that part of the District Attorney's argument.'

"No further objection was made to that portion of the District Attorney's argument, and no other bill taken to those particular remarks."

Further discussion would appear unnecessary. Appellant's motion for rehearing is overruled.