## PETE HERNANDEZ V. STATE

No. 25,816. June 18, 1952
Appellant's Motion for Rehearing Denied
(Without Written Opinion) October 22, 1952
Order of Supreme Court of United States Granting Petition for
Writ of Certiorari filed in Court of Criminal Appeals
October 17, 1953
Judgment of Court of Criminal Appeals Reversed and Remanded by
Supreme Court of the United States May 3, 1954

*Carlos C. Cadena* and *Gus C. Garcia*, San Antonio, for appellant.

*George P. Blackburn*, State's Attorney, Austin, for the state.

DAVIDSON, Judge.

Murder is the offense, with punishment assessed at life imprisonment in the penitentiary.

Appellant is a Mexican, or Latin American. He claims that he was discriminated against upon the trial of this case because members of the Mexican nationality were deliberately, systematically, and wilfully excluded from the grand jury that found and returned the indictment in this case and from the petit jury panel from which was selected the petit jury that tried the case. He sought, for said reasons, to quash the indictment and petit jury panel, claiming he had thereby been deprived of equal protection.

The action of the court in overruling the two motions presents the sole question for review.

In support of his contention, appellant relies upon the so-called rule of exclusion as announced by the Supreme Court of the United States—that is, that the long and continued failure to call members of the Negro race for jury service, where it is shown that members of that race were available and qualified for jury service, grand or petit, constitutes a violation of due process and equal protection against members of that race.

The rule appears to have been first announced in Norris v. Alabama, 294 U. S. 587, 55 Ct. 579, 79 L. Ed. 1074, and since then followed. See Smith v. Texas, 311 U. S. 128, 61 S. Ct. 164, 85 L. Ed. 84; Hill v. Texas, 316 U. S. 400, 62 S. Ct. 1159, 86 L.

Ed. 1559; Cassell v. Texas, 339 U. S. 282, 70 S. Ct. 629, 94 L. Ed. 839; and Ross v. Texas, 341 U. S. 918, 71 S. Ct. 742, 95 L. Ed. 1352.

Appellant would have the above rule to extend to and apply to members of different nationalities—particularly to Mexicans.

Much testimony was introduced by which appellant sought to show the systematic exclusion of Mexicans from jury service and that there were members of that nationality qualified and available for such service in Jackson County. The facts proven, however, were of no greater probative force than those stipulated by the state and the appellant, which we quote as follows:

"The State will stipulate that for the last twenty-five years there is no record of any person with a Mexican or Latin American name having served on a jury commission, grand jury or petit jury in Jackson County."

"It is stipulated by counsel for the State and counsel for the defendant that there are some male persons of Mexican or Latin American descent in Jackson County who, by virtue of being citizens, householders, or freeholders, and having all other legal prerequisites to jury service, are eligible to serve as members of a jury commission, grand jury and/or petit jury."

With reference to the petit jury, we quote the following:

"It is stipulated by counsel for the State and counsel for defendent that there is no person of Mexican or other Latin American descent or blood on the list of talesmen."

These stipulations of necessity included the ability to read and speak the English language.

It was shown that Jackson County had a population of approximately 18,000, 15% of which—a witness estimated as a "wild guess"—were Mexicans. The same witness also testified as a "rough estimate" that 6 or 7% of that 15% were freeholders upon the tax rolls of the county. It was shown, also, that the population of Jackson County was composed also of Bohemians, Germans, Anglo-Americans, and Negroes. The relative percentages of these however, were not estimated.

It may be said, therefore, that the facts relied upon by the appellant to bring this case within the rule of systematic ex-

clusion are that at the time the grand jury was selected and at the time of the trial of this case there were "some male persons of Mexican or Latin American descent in Jackson County" who possessed the qualifications requisite to service as grand or petit jurors, and that no Mexican had been called for jury service in that county for a period of twenty-five years.

There is an absence of any testimony here suggesting express or factual discrimination against appellant or other Mexicans in the selection, organization, or empaneling of the grand or petit jury in this case. To sustain his claim of discrimination, appellant relies only upon an application of the rule of exclusion mentioned.

In so far as this court is concerned, the question here presented was determined adversely to appellant's contention in the case of Sanchez v. State, 147 Texas Cr. R. 436, 181 S.W. 2d 87, where we said:

"In the absence of a holding by the Supreme Court of the United States that nationality and race bear the same relation, within the meaning of the constitutional provision (Fourteenth Amendment) mentioned, we shall continue to hold that the statute law of this State furnishes the guide for the selection of juries in the State, and that, in the absence of proof showing express discrimination by administrators of the law, a jury so selected in accordance therewith is valid." (Parentheses supplied.)

Within our knowledge, no decision of the Supreme Court of the United States has been rendered which would change the conclusion just expressed.

The validity of laws of this state providing for the selection of grand or petit jurors (Arts. 333-350, C.C.P.) has never been seriously challenged. Indeed, the Supreme Court of the United States, in Smith v. Texas, 311 U. S. 128, 61 S. Ct. 164, L. Ed. 84, recognized the validity thereof when it said:

"Here, the Texas statutory scheme is not in itself unfair; it is capable of being carried out with no racial discrimination whatsoever."

It was with this statement in mind that we said, in effect, that, in the absence of express discrimination, a jury, grand or petit, drawn in accordance with the statute law of this state was valid.

Appellant challenges the correctness of our conclusion and charges that by such holding we have extended special benefits to members of the Negro race which are denied to Mexicans, thereby violating equal protection to them. Such contention calls, of necessity, for a construction of the equal protection clause of the Fourteenth Amendment to the Federal Constitution with reference to the selection of juries in state court trials and the decisions of the Supreme Court of the United States relative thereto.

The Fourteenth Amendment to the Federal Constitution in relation to equal protection[1] was adopted to secure to members of the Negro race, then recently emancipated, the full enjoyment of their freedom. Nixon v. Herndon, 273 U. S. 536, 71 L. 579, 47 S. Ct. 446; Buchanan v. Warley, 245 U. S. 60, 62 L. Ed. 149, 38 S. Ct. 16; Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; Slaughter-House cases, 16 Wall (U. S.) 36, 21 L. Ed. 394.

While the Supreme Court of the United States had before it the question of race discrimination under the Fourteenth Amendment in the Slaughter-House cases, it appears that it was not until the case of Strauder v. West Virginia that the court had occasion to determine that race discrimination in jury organization was prohibited by the Fourteenth Amendment. In the latter case a statute of West Virginia limited jury service to white male persons. This statute was held as discriminatory against members of the Negro race and, therefore, violative of equal protection.

Following the Strauder case, the question of race discrimination in the selection of juries was before the court upon several occasions.

In Carter v. Texas, 177 U. S. 442, 442 L. Ed. 839, 20 S. Ct. 687, the rule was stated as follows:

"Whenever by any action of a State, whether through its legislature, through its courts, or through its executive or administrative officers, all persons of the African race are excluded, solely because of their race or color, from serving as grand jurors in

---

1.—"Section I. All persons born or naturalied in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

the criminal prosecution of a person of the African race, the equal protection of the laws is denied to him, contrary to the Fourteenth Amendment of the Constitution of the United States. Strauder v. West Virginia, 100 U. S. 303, 25 L. Ed. 664; Neal v. Delaware, 103 U. S. 370, 397, 26 L. Ed. 567, 574; Gibson v. Mississippi, 162 U. S. 565, 40 L. Ed. 1075, 16 S. Ct. 904."

The rule, as thus established, applies equally to petit jury selection.

For a time, and until the case of Norris v. Alabama, 294 U. S. 587, 55 S. Ct. 579, 79 L. Ed. 1074, establishment of discrimination rested upon facts showing actual or express discrimination against members of the Negro race. In the Norris case, however, the so-called rule of exclusion was announced in the following language, viz.:

"We think that the evidence that for a generation or longer no Negro had been called for service on any jury in Jackson County, that there were Negroes qualified for jury service, that according to the practice of the jury commission their names would normally appear on the preliminary list of male citizens of the requisite age but that no names of Negroes were placed on the jury roll, and the testimony with respect to the lack of appropriate consideration of the qualifications of Negroes established the discrimination which the Constitution forbids."

In succeeding cases this rule of exclusion was followed or adverted to in the cases of Smith v. Texas, 311 U. S. 128, 85 L. Ed. 84, 61 S. Ct. 164; Hill v. Texas, 316 U. S. 400, 86 L. Ed. 1559, 62 S. Ct. 1159; and Akins v. Texas, 325 U. S. 398, 89 L. Ed. 1692, 65 S. Ct. 1276.

The effect of the rule of exclusion is to furnish means by which proof of discrimination may be accomplished.

In the Akins case, the idea of proportional representation of races on a jury as a constitutional requisite was rejected. The basis of such rejection was pointed out in Cassell v. Texas, 339 U. S. 282, 70 S. Ct. 629, 94 L. Ed. 839, as follows:

"We have recently written why proportional representation of races on a jury is not a constitutional requisite. Succinctly stated, our reason was that the Constitution requires only a fair jury selected without regard to race. Obviously, the number of races and nationalities appearing in the ancestry of our

citizens would make it impossible to meet a requirement of proportional representation."

The conclusion of race discrimination expressed in the Cassell case, which is one of the latest expressions by the Supreme Court of the United States upon the subject, appears not to have been based upon the so-called rule of exclusion above mentioned but upon the conclusion that the jury commissioners appointed to select the list of names from which the grand jury was to be selected did not "familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color. They did not do so here, and the result has been racial discrimination."

In addition to that conclusion, the Cassell case also announced the rule that discrimination may be shown by inclusion as well as exclusion, on account of race, in jury selection.

To our minds, it is conclusive that, in so far as the question of discrimination in the organization of juries in state courts is concerned, the equal protection clause of the Fourteenth Amendment contemplated and recognized only two classes as coming within that guarantee: the white race, comprising one class, and the Negro race, comprising the other class.

We said in Sanchez v. State, 156 Texas Cr. R. 468, 243 S.W. 2d 700, that "Mexican people are not a separate race but are white people of Spanish descent." In contemplation of the Fourteenth Amendment, Mexicans are therefore members of and within the classification of the white race, as distinguished from members of the Negro race. In so far as we are advised, no member of the Mexican nationality challenges that statement. Appellant does not here do so.

It is apparent, therefore, that appellant seeks to have this court recognize and classify Mexicans as a special class within the white race and to recognize that special class as entitled to special privileges in the organization of grand and petit juries in this state.

To so hold would constitute a violation of equal protection, because it would be extending to members of a class special privileges not accorded to all others of that class similarly situated. Moreover, it must be remembered that no man, or set of men, has the right to require that a member of his race be a member of the grand jury that indicts him or of the petit jury

that tries him. All that the Constitution, State or Federal, guarantees in that connection is that in the organization of such juries he be not discriminated against by reason of his race or color. Thomas v. Texas, 212 U. S. 278, 26 S. Ct. 393, 53 L. Ed. 512; Martin v. Texas, 200 U. S. 316, 26 S. Ct. 338, 50 L. Ed. 497; Carter v. Texas, 177 U. S. 442, 20 S. Ct. 687, 44 L. Ed. 839.

To say that members of the various nationalities and groups composing the white race must be represented upon grand and petit juries would destroy our jury system, for it would be impossible to meet such requirement. Such, also, would destroy the rule above stated and would be tantamount to authorizing an accused to demand that a member of his nationality be upon the jury that indicts and tries him. In addition, to so hold would write into the equal protection clause proportional representation not only of races but of nationalities, which the Supreme Court of the United States has expressly rejected.

Mexicans are white people, and are entitled at the hands of the state to all the rights, privileges, and immunities guaranteed under the Fourteenth Amendment. So long as they are so treated, the guarantee of equal protection has been accorded to them.

The grand jury that indicted appellant and the petit jury that tried him being composed of members of his race, it cannot be said, in the absence of proof of actual discrimination, that appellant has been discriminated against in the organization of such juries and thereby denied equal protection of the law.

The judgment is affirmed.

Opinion approved by the court.