704 S.W.2d 575 (1986)
William Henry HOWARD, Jr., Appellant,
v.
The STATE of Texas, Appellee.
No. 09-85-138 CR.
Court of Appeals of Texas, Beaumont.
February 12, 1986.
*576 C. Haden Cribbs, Jr., Beaumont, for appellant.
John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

OPINION
BROOKSHIRE, Justice.
The Appellant pleaded guilty to the offense of intentionally and knowingly delivering, by an actual transfer, a controlled substance, Diazepam, in a quantity of less than 200 grams. The indictment set out June 30, 1984, as the date of the delivery. An enhancement paragraph alleged that the Appellant, on October 13, 1978, in Jefferson County, had been convicted by a final judgment of the felony of aggravated robbery.

THE SOLE ISSUE DECIDED
As shown by the stipulation below, the premier question is whether a grand juror's moving from North Beaumont, in Jefferson County, to Lumberton, in Hardin County, standing solely and alone, disqualifies that person as a grand juror. Our narrow, square, holding is that his moving across a county line to an adjacent county does not disqualify him. We do not intend to pass upon any other question. We are unwilling to be understood as holding that, if a person had met the legal qualifications as a grand juror at impaneling time; but, thereafter, was indicted and convicted of a crime, that person could still serve as a grand juror during his term. Furthermore, there is nothing in this record to indicate that the challenged grand juror was not an honest, law-abiding citizen. Certainly his move across a county line does not prove differently.
We think that a quotation from a recent landmark case, by the Court of Criminal Appeals, is both appropriate and compelling. The case is Almanza v. State, 686 S.W.2d 157, 173 (Tex.Crim.App.1984). We quote:
"... As a court of last resort we should not be so far removed from reality that we cannot see when common sense coincides with the fair administration of justice. When we do see such coincidence our duty seems clear."
*577 The fair administration of justice makes our duty clear in this case. Any other decision would "engender disrespect for the courts and the law". Almanza v. State, supra.

THE STIPULATION
The facts of this appeal are in one "Stipulation of Evidence". The salient paragraphs of the Stipulation state:
"2. On October 1, 1984 Nicolas Kinchen was duly impanelled as a member of the October 1984 Term Jefferson County Grand Jury.
"3. On October 1, 1984, at the time said Grand Jury was impanelled, the said Nicolas Kinchen resided at 6550 Lexington Drive # 35, Beaumont, Jefferson County, Texas.
"4. At the time he was impanelled as a member of the October 1984 Term of the Grand Jury, the said Nicolas Kinchen met all of the requirements and qualifications to serve as a Grand Juror under 19.02 Texas Code of Criminal Procedures.
"5. On or about December 1, 1984, the said Nicolas Kinchen moved his residence from Jefferson County, Texas to 1100 Red Oak, Lumberton, Texas which is located in Hardin County, Texas.
. . . .
"7. On December 17, 1984, the October Term 1984 Grand Jury returned indictments in Cause Nos. 45278 and 45279, against William Henry Howard.
"8. On December 17, 1984, Nicolas Kinchen was present and participated as a member of the October Term 1984 Grand Jury.
"9. On December 17, 1984 Nicolas Kinchen was a resident of Hardin County, Texas."
The Stipulation does not reveal whether Nicolas Kinchen voted for or against the true bill of indictment. Nor does it reveal the number of votes for the true bill. If at least 9 other grand jurors had voted in favor of a true bill, then Kinchen's vote would be immaterial.
The indictment herein had the trial court number of 45,279. Appellant was sentenced to 5 years in the State Department of Corrections. Prior to the trial, Appellant had filed a "Motion to Quash or Set Aside Indictments." After the court overruled the "Motion to Quash or Set Aside Indictments", a plea bargain was entered into, resulting in the 5 years incarceration. The Appellant's motion was based on his contention that TEX.CODE CRIM.PROC.ANN. art. 27.02 (Vernon 1986 Pamph.Supp.) and art. 27.03 (Vernon 1966) had not been followed. The motion does not set out which subpart of art. 27.02 is relied upon, nor is the subpart or subdivision of art. 27.03 specifically pleaded. But the motion spells out that the indictments are defective and should be set aside by the trial court "upon the grounds that an unauthorized person was present when the Grand Jury was deliberating upon the accusation against your Defendant, or was present when the Grand Jury was voting upon the said indictments." (Emphasis ours)
Then, the motion to quash sets out in part:
"Evidence will show that a member of the October Term 1984 Jefferson County Grand Jury, namely: Nicolas Kinchen, had moved his residence from Jefferson County, Texas, to Hardin County, Texas, prior to the date of these indictments, and that on December 17, 1984, the date upon which said indictments were returned against your Defendant, the said Nicolas Kinchen was a participating member of the October Term 1984 Jefferson County, Texas, Grand Jury even though the same Nicolas Kinchen resided in Hardin County, Texas."

THE STATUTES
After this recitation with some legal conclusions having been pleaded, the motion does refer to a specific part of TEX.CODE CRIM.PROC.ANN. art. 19.08 (Vernon Supp.1986) as follows:
*578 "No person shall be selected or serve as a grand juror who does not possess the following qualifications:
"1. He must be a citizen of the state, and of the county in which he is to serve, and be qualified under the Constitution and laws to vote in said county, provided that his failure to register to vote shall not be held to disqualify him in this instance...." (Emphasis ours)
In view of this later paragraph of his motion, it seems obvious that Appellant was referring to art. 27.03 stating:
"2. That some person not authorized by law was present when the grand jury was deliberating upon the accusation against the defendant, or was voting upon the same;...." (Emphasis ours)
We construe art. 19.08(1) to determine and to fix a grand juror's qualification at the time he is impaneled and takes the qualifying oath.
It is a cardinal rule of statutory construction to construe statutes dealing with the same subject matter harmoniously. We necessarily construe art. 19.08 with closely related statutes, an important one being TEX.CODE CRIM.PROC.ANN. art. 19.21 (Vernon 1977), entitled "To test qualifications", reading:
"When as many as twelve persons summoned to serve as grand jurors are in attendance upon the court, it shall proceed to test their qualifications as such";
a second one being TEX.CODE CRIM.PROC.ANN. art. 19.22 (Vernon 1977), reading:
"Each person who is presented to serve as a grand juror shall, before being impaneled, be interrogated on oath by the court or under his direction, touching his qualifications";
a third one being TEX.CODE CRIM.PROC.ANN. art. 19.23 (Vernon 1977), the "Mode of Test", reading:
"In trying the qualifications of any person to serve as a grand juror, he shall be asked:
"1. Are you a citizen of this state and county, and qualified to vote in this county, under the Constitution and law of this state?
"2. Are you able to read and write?
"3. Have you ever been convicted of a felony?
"4. Are you under indictment or other legal accusation for theft or for any felony?" (Emphasis added)
Then TEX.CODE CRIM.PROC.ANN. art. 19.24 (Vernon 1977) comes into play, reading:
"When, by the answer of the person, it appears to the court that he is a qualified juror, he shall be accepted as such, unless it be shown that he is not of sound mind or of good moral character, or unless it be shown...." (Emphasis ours)
Reading these statutes together, it is transparently clear that, when construed harmoniously, they mean that the qualifications of a grand juror are to be set, fixed and determined by the court as of the time of impaneling the grand jurors.
TEX.CODE CRIM.PROC.ANN. art. 19.29 (Vernon 1977) provides:
"A grand juror is said to be `impaneled' after his qualifications have been tried and he has been sworn. By `panel' is meant the whole body of grand jurors." (Emphasis ours)
The oath of the grand jurors is set out meaningfully and cogently in TEX.CODE CRIM.PROC.ANN. art. 19.34 (Vernon 1977). The oath sworn to is:
"... `You solemnly swear that you will diligently inquire into, and true presentment make, of all such matters and things as shall be given you in charge; the State's counsel, your fellows and your own, you shall keep secret, unless required to disclose the same in the course of a judicial proceeding in which the truth or falsity of evidence given in the grand jury room, in a criminal case, shall be under investigation. You shall present no person from envy, hatred or malice; neither shall you leave any person unpresented for love, fear, favor, affection or hope of reward; but you *579 shall present things truly as they come to your knowledge, according to the best of your understanding, so help you God'."
It must be stressed that the grand juror shall present no person from envy, hatred or malice; neither shall the grand juror leave any person unpresented for love, fear, favor, affection or hope of reward, but the grand juror shall present things truly as they come to his knowledge, according to the best of his understanding. This oath sets forth the rationale and philosophy of the grand jurors' duties and obligations to the people of Texas and to the administration of justice. Nothing in the above statutes indicates that a later move to an adjacent county would disqualify a grand juror, who had been previously duly impaneled. There is nothing in the oath of the grand juror that hints that he would be disqualified by such a move. The stipulation does not speak to the issue of permanency of the move. Nor does it negate an intention of Kinchen to return to Jefferson County.
And, of course, TEX.CODE CRIM.PROC.ANN. art. 19.40 (Vernon 1977) affirmatively states, mandates, and dictates that 9 members of the grand jury shall be a quorum for the purpose of discharging any duty or exercising any right belonging to the grand jury.
TEX.CODE CRIM.PROC.ANN. art. 20.19 (Vernon 1977) provides, in substance, that after the testimony which is accessible to the grand jury shall have been given in respect to a criminal accusation, the vote shall be taken as to the presentment of an indictment, and if nine members concur in finding a true bill, the foreman then shall make a memorandum of that action with such data as will enable the attorney who represents the State to write out the indictment.

APPELLANT'S ARGUMENTS AND AUTHORITIES
Appellant cities 4 cases in his brief. They are: Sanchez v. State, 147 Tex.Cr.R. 436, 181 S.W.2d 87 (1944); Conklin v. State, 144 Tex.Cr.R. 210, 162 S.W.2d 416 (1942); Woods v. State, 26 Tex.App. 490, 10 S.W. 108 (1888); and Ray v. State, 561 S.W.2d 480 (Tex.Crim.1977).
In Sanchez, supra, the court construed then art. 339, C.C.P. Article 339 was succeeded by art. 19.08. The court, construing then art. 339 wrote, 181 S.W.2d at page 88:
"These mandatory provisions of the statute, which are not deemed to be unfair, must be observed by the jury commission in the selection of the prospective grand jurors...." (Emphasis ours)
We think it obvious the court was writing about the time the jury commission was in the process of selecting the grand jurors, and that the required qualifications are fixed and tested at the time of the selection of the grand jury and its impaneling and oath taking.
But clearly, in Sanchez, supra, the thrust of the objection to the grand jury was to the effect that, in Hudspeth County, there had been a long, continued, and uninterrupted refusal and failure, on the part of the grand jury commissioners, to select grand jurors of "Mexican or Spanish" descent for a period of more than 6 years. As well, Sanchez, supra, urged that American citizens, of either Mexican or Spanish descent, had not been called to serve either as grand jurors or petit jurors. Defendant, Sanchez, objected to racial and ethnic discrimination. The Sanchez, supra, case is neither persuasive nor controlling here. Howard does not complain of racial or ethnic discrimination.
In Conklin, supra, 162 S.W.2d at page 417, the main thrust of the objection under art. 339, C.C.P., 1925, challenged the grand jury on that part of the statute reading:
"... but, whenever it shall be made to appear to the court that the requisite number of jurors who have paid their poll taxes can not be found within the county, the court shall not regard the payment of poll taxes as a qualification for service as a juror." (Emphasis theirs)
*580 Conklin challenged 3 of the grand jurors: "because it is shown that at the time they were placed on the grand jury many more than the requisite number of grand jurors were available who had paid their poll tax...." The court wrote upon the basic philosophy of the then art. 339, C.C.P. 1925, at page 418, proclaiming:
"... [T]hat the Legislature believed that one called upon to serve as a grand juror should have sufficient interest in affairs of good government to qualify himself to vote by paying his poll tax, or be exempt therefrom...." (Emphasis ours)
There is nothing in the record subjudice to demonstrate that the move of Nicolas Kinchen from Jefferson County to Hardin County was repugnant to the court's basic philosophy that a grand juror should have an interest in good government. Nothing is shown that the challenged grand juror did not have sufficient interest in the affairs of good government.
Further, it must be pointed out that it is not shown in this record that this grand juror, Nicolas Kinchen, either voted for the true bill or against the true bill. TEX.CODE CRIM.PROC.ANN. art. 20.19 (Vernon 1977). Conklin, supra, is not supportive of Appellant's contention.
Indeed, Conklin, supra, insisted, again, that the qualifications of the grand jurors are to be tested, fixed and determined when the individual grand jurors were impaneled and placed on the grand jury. We quote from Conklin, at 417:
"... Appellant bases his challenge to the three grand jurors heretofore referred to upon that part of the foregoing article which is italicized, because it is shown that at the time they were placed upon the grand jury many more than the requisite number of grand jurors were available who had paid their poll tax...." (Emphasis ours)
Next, the Appellant argues that the judgment should be reversed based on Woods v. State, supra. This case was by the Court of Appeals of Texas, decided on November 28, 1888. Even in those olden times of Texas judicial history, we note that, in the first paragraph of the court's opinion, Presiding Judge White writes, 10 S.W. at page 108:
"Appellant interposed a plea in abatement of the indictment, upon the alleged disqualification and incompetency of one of the grand jurors who presented the bill; the ground of disqualification and incompetency being that he had, before sitting on said jury, been convicted of a felony...." (Emphasis ours)
Again, it is forcefully demonstrated that, from olden times, the courts of Texas have construed and interpreted the qualifications of a grand juror as being at the time of impaneling or, as in the Woods case, "before sitting on said jury."
In any event, in Woods, supra, the question was whether or not the grand juror was a convicted felon and had been convicted of a felony "before sitting on said jury." Hence, Woods, supra, is not even persuasive. It is to no degree controlling.
The last case cited by Appellant is Ray v. State, supra. In Ray, supra, the court pointed out, at page 482:
"At no time did any of these witnesses testify that any unauthorized person sat with the grand jury during the time it deliberated or voted on the indictments before it. In fact, the chief prosecutor testified unequivocally that no witness or prosecutor was ever present during the voting or deliberations of the grand jury which indicted this appellant. Similarly, the foreman stated that only the grand jurors stayed in the jury room during the grand jury's deliberations.
"It follows that the appellant has failed to meet his burden of showing that the sanctity of the grand jury was violated...." (Emphasis added)
This fairly recent case, decided October 5, 1977, by a unanimous court, deems that witnesses and prosecutors are "unauthorized persons" who must not be present during the voting or the deliberations of the grand jury. Our Appellant's reliance *581 upon Ray v. State, supra, is definitely misplaced.
We hold that Kinchen was not an "unauthorized person" in the grand jury room. We think the holding and language of Ray, supra, works against the Appellant's contention in this case.

THE DOCTRINE OF "DE FACTO" GRAND JUROR
By stipulation, Kinchen was a fully qualified grand juror at the time of his impaneling. If Kinchen's move from Jefferson County to Hardin County gave rise to some technical ineligibility (which we decide is not the case); nevertheless, since he was a fully qualified, duly impaneled, and sworn grand juror and "participating" under such authority, Kinchen, after the move, was at least a "de facto" grand juror. We conclude this holding of "de facto" grand juror is sound in logic and reason because there is nothing in this record to show that his mere move from one county to an adjacent county would, in any way, discredit or decrease his ability to deliberate upon the evidence presented in the grand jury room or cast an intelligent vote either for or against an indictment.
As a "de facto" juror, Kinchen was acting under the valid color of title of a public officeholder. Kinchen was certainly a "de facto" officer. A person may be a "de facto" officer though ineligible to hold that particular office. Broach v. Garth, 50 S.W. 594 (Tex.Civ.App.1899, no writ); Graves v. M. Griffin O'Neil & Sons, 189 S.W. 778 (Tex.Civ.App.Dallas 1916, no writ). While acting as such "de facto" grand juror, his official acts would have the same legal effect as those of a "de jure" juror. The "de facto" doctrine is sound, valid and salutary. It is based on the grounds of sound public policy. It is efficacious to a practical, correct criminal justice system. In Ex Parte Tracey, 93 S.W. 538 (1906), the court wrote, at page 542:
"... The whole doctrine of de facto officer is founded upon policy and necessity, in order to protect the public and individuals, where they may become involved in the official acts of persons discharging the duties of an office, without being lawful officers."
See Germany v. State, 109 Tex.Cr.R. 180, 3 S.W.2d 798 (1928).
"De facto" Kinchen was authorized to be present, to deliberate, and to vote on the indictments. He was not an unauthorized person whose presence was disallowed by TEX.CODE CRIM.PROC.ANN. art. 27.03 (Vernon 1966).
In discussing the nature of a "de facto" officer, the Court of Criminal Appeals, in Brown v. State, 42 Tex.Cr.R. 417, 60 S.W. 548 (1901), at 549, authoritatively defined a "de facto officer" as:
"... A de facto officer is one who is in possession of an office and discharging its duties under color of authority, by which is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer...."
We quote from 67 C.J.S. Officers sec. 276, (1978) at page 812:
"The acts of an officer de facto are as valid and effectual where they concern the public or the rights of third persons, until his title to the office is judged insufficient, as though he were an officer de jure, especially where the existence of the office de jure cannot be challenged; such rule is based on considerations of public policy, necessity, justice, or convenience...." (Emphasis ours)
To the same effect is a quotation from 63A Am.Jur.2d Public Officers and Employees, sec. 596 (1984), "Ineligibility arising during term of office", at page 1093:
"A de jure officer who becomes ineligible to hold the office during the term of office becomes a de facto officer until ousted in an appropriate proceeding...."
Of course, Kinchen was never ousted as either a "de jure" grand juror or "de facto" grand juror.
One of the concurring opinions, it seems, would require that the members of the grand jury go through a complete qualification *582 procedure, or a requalification procedure, every time they returned one or more true bills of indictment. At present, this is nowhere provided for in our statutes, we opine. This second qualification procedure would have to be conducted by a judge, rather than a clerk of the court. A foreman of a grand jury may now deliver an indictment to the "clerk of the court". TEX.CODE CRIM.PROC.ANN. art. 20.21 (Vernon Supp.1986). Article 20.21 implies that a grand juror's qualifications are fixed and determined when he is first impaneled and takes his oath.
Under this record, Howard has failed to show any harm. It was Howard's burden to do so. The one ground of error is overruled.
The judgment and sentence of the trial court are affirmed.
AFFIRMED.
DIES, Chief Justice, concurring.
I concur in the results of the majority opinion with these additional remarks. TEX.CODE CRIM.PROC.ANN. art. 19.08 (Vernon Supp.1986) requires the following, in part:
"No person shall be selected or serve as a grand juror who does not possess the following qualifications:
"1. He must be a citizen of the state, and of the county in which he is to serve...."
It is understandable the legislature would require a grand juror to be a resident of the county in which he is to serve. An extreme example (and unlikely) may show why. If four members of a grand jury panel moved from Beaumont to El Paso, the grand jury could have a very difficult task accomplishing its work. However, the fact that Kinchen moved to Hardin County should not reverse this case.
In my judgment, since Almanza v. State, 686 S.W.2d 157 (Tex.Crim.App.1985)[1], no indictment for any irregularity should be dismissed by a trial judge without a showing of harm to the defendant. In this case, such was not done. There is no suggestion in the stipulation before us that Kinchen voted on defendant's indictment.
We must comment that we strongly disfavor the presentation of this problem by a stipulation and, especially, one not signed by Kinchen. We think it would have been better to examine Kinchen under oath so that all matters of interest could have been gone into.
BURGESS, Justice, concurring.
I concur in the result reached by the majority. I would hold, however, that Grand Juror Kinchen became disqualified to serve as a grand juror when he failed to meet the requirements of TEX.CODE CRIM.PROC.ANN. art. 19.08 (Vernon Supp.1986). I read the article in the disjunctive, that is, "no person may be selected or serve...." It seems clear to me that when a grand juror fails to meet any of the enumerated qualifications, he may no longer serve.
The grand jury was established in common law to protect the citizens from the "king". To carry out this long established mandate, the legislature has established qualifications to insure that only honest, law abiding citizens of the county serve on grand juries. Under the majority's reasoning, if an individual met all the qualifications at the time the grand jury was formed, and then should the grand juror, for instance, be later indicted, and convicted the grand juror could still serve during the term. I do not believe this was the intent of the common law nor the intent of our legislature.
I concur in the result reached, because there is absolutely no evidence that Mr. Kinchen took part in deliberations or voted on the indictment in question. While the stipulation states, Mr. Kinchen participated as a member of the grand jury, this does not necessarily include participating in deliberations *583 and voting. Thus the appellant failed to prove any harm under TEX.CODE CRIM.PROC.ANN. art. 27.03(2) (Vernon 1966).
Simply put, I would hold Grand Juror Kinchen became disqualified to serve as a grand juror when he moved out of Jefferson County and therefore was an "unauthorized person". The defendant, however, failed to show Mr. Kinchen was present when the indictment was deliberated or voted upon. Thus, no error has been shown.
For reasons stated, I concur in the result only.
NOTES
[1] While Almanza involved error in the charge, we see no reason to restrict it to that. See Arline v. State, 702 S.W.2d 755 (Tex.App.Beaumont 1986).