**Vernon C. BURKE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 16625.

United States Court of Appeals Ninth Circuit.

Sept. 15, 1960.

Rehearing Denied Nov. 12, 1960.

Carlos Bea, Dunne, Dunne & Phelps, San Francisco, Cal., for appellant.

William T. Plummer, U. S. Atty., Anchorage, Alaska, George M. Yeager, Asst. U. S. Atty., Fairbanks, Alaska, for appellee.

Before ORR and HAMLIN, Circuit Judges, and EAST, District Judge.

EAST, District Judge.

### Jurisdiction

On March 27, 1956, Appellant was duly indicted for the alleged crime of Assault with a Dangerous Weapon, in violation of § 65-4-22 of the Alaska Compiled Laws Annotated, 1949.[1] The entire chapter and scene of this cause in the District Court was written and closed, culminating in a jury verdict of guilty and the District Court's judgment of conviction entered on April 2, 1958, prior to the achievement of statehood by the Territory of Alaska. Appellant appeals from this judgment of conviction. The District Court had (48 U.S.C.A. § 101) and this Court has (28 U.S.C. §§ 1291 and 1292, prior to the Amendments—Public Law No. 85–508, 72 Stat. 339), jurisdiction.

### Statement of Facts

On March 18, 1956, during the early morning hours, Appellant and a John Homethko were in the Alley Cat bar near Fairbanks, Alaska. The evidence disclosed that although Homethko held the lease for the bar, there was an oral arrangement between the two that Appellant held an interest in the operation. Appellant ignored a request of service by Homethko and an argument resulting in a fist fight ensued. Homethko left to change bloody clothing after advising Appellant that the business arrangement was off. Homethko returned to his duties at the bar and Appellant returned about one hour later and demanded a beer. After being refused, he told Homethko "all right, the joint is yours, and I brought something else for you." Thereupon, while standing about a distance of three feet from Homethko, Appellant pulled a pistol from his belt and fired two shots, neither of which hit Homethko, and went past him, one on each side, going through a beer cooler and some stacked beer. After the shooting, Homethko fainted and fell behind the bar. The evidence is in conflict as to whether Homethko deflected Appellant's hand just before the shots were fired. As Appellant started to walk out, Homethko revived and challenged Appellant to fight without a gun. Appellant

1. A.C.L.A. § 65-4-22. "Assault With Dangerous Weapon.

"That whoever, being armed with a dangerous weapon, shall assault another with

declined and continued out. There is a conflict in the testimony as to whether Appellant was pointing a pistol at Homethko as he went out of the bar. Appellant states that he intended to fire the shots into the beer cooler.

### Proceedings in the District Court

Following Appellant's plea of not guilty, the case was tried before a jury [2] and upon the close of the evidence the District Court instructed the jury on the material elements of the charged crime in these words:

"2.

"The indictment in this case charges the defendant with the crime of assault with a dangerous weapon, alleged to have been committed on or about March 18, 1956, in the jurisdiction of this court, upon John Homethko, by pointing a gun at him.

"The law of Alaska defines the crime as follows:

" 'That whoever being armed with a dangerous weapon shall assault another with such weapon, shall be punished.'

"An assault with a dangerous weapon is an unlawful attempt or offer, coupled with present ability, to injure another with such weapon. Any pointing of a loaded gun at or toward another in a menacing and threatening manner is sufficient to constitute an assault with a dangerous weapon, if the person assaulted is within the range that the gun might carry.

"As to dangerous weapon, you are instructed that a loaded gun is a dangerous weapon.

"3.

"The essential elements of the crime charged, each of which must be proved beyond a reasonable doubt before the defendant may be convicted, are:

"1. An assault, and

"2. With a dangerous weapon.

"It is undisputed that the crime, if committed, was committed at or about the time and place charged. Therefore, if you find from the evidence beyond a reasonable doubt that at or about the time and place charged, the defendant made an assault with a loaded gun upon John N. Homethko by pointing it at or toward the said Homethko in a threatening or menacing manner, you should find him guilty. But, if you do not so find or have reasonable doubt thereof, you should acquit him." R., Vol. I, 3, 4; Vol. II, 101–102.

The Appellant did not request of the District Court any jury instruction on the material elements of the crime charged, nor did he except to the foregoing instruction as being erroneous or insufficient at law.

Subsequent to the entry of the judgment of conviction and on April 4, 1958, the District Court, on its own motion, ordered, and the Clerk of the Court did, file a notice of appeal to this Court on behalf of the Appellant; however, it denied Appellant's motion to prosecute his appeal in forma pauperis. This Court granted Appellant leave to appeal in forma pauperis and appointed Mr. Carlos Bea, Attorney at Law, San Francisco, as counsel herein.

### Specification of Error

(1) That the Court erred in its charge to the jury aforesaid.

The questions presented are:

(a) Whether a general intent on the part of the defendant to cause bodily injury to the victim is a material element of the crime of Assault with a Danger-

---

such weapon, shall be punished * * * (a felony or a misdemeanor conviction)".

2. A prior jury trial resulted in a verdict of guilty. The District Court, sua sponte, granted a new trial on grounds of an erroneous instruction.

ous Weapon, as defined in § 65-4-22 aforesaid; and

(b) Whether the District Court committed reversible error in failing to instruct the jury that it must find that Appellant had a present intent to inflict a bodily injury upon Homethko at the time of the alleged assault.

### Conclusion

"Congress on March 3, 1899, approved an Act entitled 'An Act to punish crimes in the District of Alaska and to provide a code of criminal procedure for said district'. Carter's Annotated Alaska Codes was published as a result of this act. 'The codes were mainly copied from the statutes of the State of Oregon, and to the end that adjudications by the Supreme Court of that state might remain as directly in point as possible, changes were sparingly made.'

"Section 65-4-22 originally came from Hill's Annotated Laws S. 1744 of Oregon and was compiled in Carter's Code as Section 24."

A comparative perusal will show that the Oregon and Alaskan enactments, so far as designating a crime is concerned, are identical.[3]

In 1889, the Supreme Court of Oregon, in State v. Godfrey, 17 Or. 300, 20 P. 625, 629, dealt with an indictment charging the defendant with the crime of being armed with a dangerous weapon and assaulting another, Chrisman, with such weapon, under the Oregon statute. In that case, as here, the defendant claimed that specific intent to bodily injure his victim was a material element of the alleged crime and urged the propriety and giving of the following instruction to the jury:

"Unless it is established beyond a reasonable doubt that the defendant at the time of the alleged assault intended to inflict death or great bodily harm upon Chrisman, coupled with a present ability to carry the same into effect, you must acquit."

The opinion concludes, 17 Or. at page 307, 20 P. at page 629, that the requested instruction was properly refused in that:

"No specific intent is necessary to constitute the crime under this statute other than such as may be embraced in the act of making an assault with a dangerous weapon. This simply embraces the intentional and unlawful use of a dangerous weapon, by means of which an assault is committed with such weapon upon the person of another." [4]

Godfrey has never been reversed, modified or qualified in any respect, and it must be accepted as the law of Oregon.[5]

This Court, in 1900, and in harmony with Godfrey, also held adversely to the contention of Appellant. In Jackson v. United States, 9 Cir., 102 F. 473, the opinion dealt with an indictment returned in the Territory of Alaska and drawn

---

3. (a) A.C.L.A. § 65-4-22 "That whoever, * * *".
(b) Hill's Ann.Laws, Or. § 1744 "If any any person, * * *
being armed with a dangerous weapon, shall assault another with such weapon, * * *.
"(a) * * * shall be punished."
"(b) * * * upon conviction thereof, shall be punished. * * *"

4. This language quoted with approval in State v. Erickson, 1910, 57 Or. 262, 265, 110 P. 785, 111 P. 17.

5. This rule has the support of leading textwriters and jurisdictions. See State v. Pallanck, 1959, 146 Conn. 527, 152 A.2d 633, a prosecution for a crime of as-

sault with a deadly or dangerous weapon. In dealing with the identical contention of Appellant here, the Court in its opinion, 152 A.2d at page 636, says:
"There is no merit to the further claim of the defendant that in order for her to be convicted of the crime charged the state had to prove a specific intent on her part to do harm. To constitute the crime, no specific intent is necessary other than that embraced in the act of making an assault with a dangerous weapon, that is, an intent to cause fear. 1 Wharton, Criminal Law & Procedure, p. 720 § 361, p. 680, § 332; * * * State v. Baker, (20 R.I. 275, 38 A. 653); People v. Ingram, 91 Cal.App.2d 912, 914, 206 P.2d 36."

under the provisions of Hill's Ann.Laws, Or., § 1744, supra, pursuant to the Organic Act of Congress providing for a civil government for Alaska, 23 Stat. 25, § 7, and had this to say, at page 484:

> "The words (in the indictment 'with the intent then and there and thereby to assault with said dangerous weapon') relating to the intent with which the weapon was drawn need not have been used, and may be treated as surplusage, although as used they are not objectionable. The law is well settled that congress or the legislature of a state or territory may enact laws for the violation of which, irrespective of the criminal intent, punishment and penalty are attached. It is the act (of making the assault with a dangerous weapon) itself, the doing of which constitutes the crime."

The opinion further recites:

> "The essential element of the crime charged was the assault made by Jackson upon Tanner with a dangerous weapon. The court charged the jury that:
>
> 'The drawing of a dangerous weapon upon the person is not necessarily criminal, because it may be done in mere jest; but, if it is done in a menacing and threatening manner, the assault is complete, notwithstanding the fact that no words were used, and notwithstanding that the defendant did not intend to shoot and kill the person at the time he presents the revolver, and it is a

violation of the statute to threateningly present a deadly weapon at another within the range that the gun might carry, if it be a gun. A dangerous weapon, under the meaning of this law, is one likely to produce death or great bodily harm; and I instruct you, as a matter of law, a gun in the hands of a person capable of using it, and at a distance within which it will carry, loaded with gunpowder and leaden bullets, is a dangerous weapon.'
>
> "It is admitted by counsel for the plaintiff in error that this portion of the charge is correct."

Jackson on this point has been continuously since and is now the law of this Circuit.[6]

Appellant refers us to several jurisdictions holding that under statutes similar to § 65–4–22 a finding of present intent to inflict bodily injury upon the victim is necessary in order to sustain a conviction of the crime of assault with a deadly weapon. The Idaho cases of State v. Yturaspe, 1912, 22 Idaho 360, 125 P. 802 and State v. Bush, 1930, 50 Idaho 166, 295 P. 432 are representative. It is noted that these cases were not dealing with substantive material elements of the crime of assault with a deadly weapon, but on the contrary with the evidentiary question as to the necessary quantum of proof of an "assault".[7] This, too, is plainly stated in Godfrey, 17 Or. at page 306, 20 P. at page 638:

> "I think these authorities clearly show that to constitute an assault

---

6. "In this respect it (indictment charging assault with a dangerous weapon in the language of Comp.Laws Alaska, 1933, § 4778) states facts sufficient to constitute the crime charged, for the words of the statute contain all of the essential elements of the offense." Eagleston v. United States, 9 Cir., 1949, 172 F.2d 194, 201. See also Randall v. United States, 9 Cir., 1954, 215 F.2d 587.

7. State v. Yturaspe says, 125 P. at page 809:
   "All these cases (citing Godfrey) clearly announce the rule to be that if the evidence shows that the gun pointed at the

assaulted party is unloaded, although threats are made, there is not only an absence of a present ability to commit violent injury, but there is also an absence of an intent to inflict a bodily injury, because the party charged can have no intent to inflict bodily injury, knowing at the time the gun is drawn that the same is unloaded, and that no injury can be inflicted because of the inability to discharge the same. This rule of law necessarily means the proof *must show an intent* and also a present ability." [Emphasis supplied.]

there must be an intentional attempt to do injury to the person of another by violence, and that such attempt must be coupled with a present ability to do the injury attempted."

And, 17 Or. at page 306, 20 P. at page 628:

"So in regard to instruction No. 2, asked by defendant, defining an assault. An unlawful attempt to do injury to the person of another, without the ability to accomplish it, would not constitute an assault, nor would the ability without the attempt be sufficient. Both elements must concur. This instruction, then, should also have been given."

We interpret these words of Godfrey to mean that a *general intent* to do a harm is required and is necessarily included within the definition of the term "assault," but not a *specific intent* to do any particular kind or degree of injury to the victim.

The District Court's challenged instruction fits squarely and firmly within the cornering of the material elements of the crime of assault with a dangerous weapon under § 65-4-22, as interpreted by Godfrey and Jackson.

There is no merit to the Appellant's specification of error.

We would conclude this review at this point except for the conscientiousness and firmness with which Appellant presents a Constitutional question. It is pointed out that § 65-4-20, A.C.L.A., Careless Use of Firearms, provides:

"Whoever intentionally, and without malice, points * * * any firearm * * * toward any person, or discharges any firearm so pointed * * * toward any person * * * shall be guilty * * *" of a misdemeanor.

Appellant argues that since § 65-4-22 provides a violator shall be guilty of a felony and it was left to the arbitrary discretion of a prosecuting officer whether the Appellant herein should have been charged under the felony statute rather than the misdemeanor statute for the same act, therefore his prosecution under § 65-4-22 is violative of the equal protection clause of the Fourteenth Amendment and the due process clause of the Fifth Amendment of the Constitution of the United States. For application of this doctrine, see Olsen v. Delmore, 1956, 48 Wash.2d 545, 295 P.2d 324; Hurd v. Hodge, 1947, 334 U.S. 24, 68 S.Ct. 847, 92 L.Ed. 1187. Appellant argues that it would be only the inclusion of "intent to bodily injure a victim" as a necessary element of the crime of assault with a dangerous weapon that would distinguish the two crimes.

The weakness of this contention lies in the fact that the "same act" would not involve the material elements of the two crimes prohibited by the two sections, respectively.

Section 65-4-20, the misdemeanor, requires:

(1) Intentionally, without malice, pointing and discharging a firearm towards another person.

While on the other hand, § 65-4-22, the felony, requires:

(1) Being armed with a firearm, and

(2) Assaulting another with it.

This feature of malice,[8] which is not necessary under the misdemeanor act, is necessarily involved and supplied by the act of an assault itself—it is this unlawful attempt or offer to injure another that is prohibited by the felony enactment, increases the culpability of the offender and makes the crime greater. This is likened to the situation of adding the additional material element of "intent to kill" (intent to bodily injure) to the prohibition of assaulting another person, thereby increasing the culpability of the wrongdoer and constituting

8. " 'Malice', in its legal sense, denotes that condition of mind which is manifested by the intentional doing of a wrongful act without just cause or excuse. It means any willful or corrupt intention of the mind." 26 Words and Phrases, p. 210.

 

the crime of assault with intent to kill, as prohibited by § 65–4–16 A.C.L.A. These three crimes, prohibited by § 65–4–16, Assault with Intent to Kill; § 65–4–22, Assault with Dangerous Weapon; and § 65–4–20, Careless Use of Firearms, are separate crimes, although the crimes of lesser degree may be included within the charge of the crime of greater degree. This doctrine of criminal law is clearly delineated in the early Oregon case of 1888 of State v. McLennen, 16 Or. 59, 16 P. 879, 880. The indictment was drawn under § 1740 of Hill's Code, which provided:

"If any person shall assault another, with the intent to kill * * [he] shall be punished * * * "

The jury returned a verdict of "guilty of the crime of an assault with a dangerous weapon," as defined in § 1744 of Hill's Code. The Court stated, 16 Or. at page 61, 16 P. at page 880:

"If the intent with which the assault is alleged to have been made were stricken out of this indictment, or if it were rejected as surplusage, the indictment would still contain enough to constitute an offense under section 1744."

The Court, referring to other authorities, continues:

"In the indictment, the accused is charged with assaulting and inflicting a wound with intent to murder; by the verdict, he is convicted of assulting and inflicting a wound *without* the intent charged. In the greater offense, the intent is to kill; in the smaller offense, the intent to kill is wanting. The offense for which he is convicted is included in the one charged in the indictment."

The Court then concluded:

"We have no doubt that the verdict is responsive to the indictment and that the offense is * * * included in the indictment."

See also Eagleston v. United States, 172 F.2d 194, at pages 198–199.

The judgment of conviction must stand.

Affirmed.