**Tommy Tillman THOMPSON, Appellant,**

**v.**

**STATE of Alaska, Appellee.**

**No. 907.**

Supreme Court of Alaska.

Aug. 12, 1968.

Chancy Croft, Croft & Bailey, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., Edmond Burke, Asst. Dist. Atty., Anchorage, for defendant.

Before NESBETT, Chief Justice, DIMOND and RABINOWITZ, JJ.

OPINION

NESBETT, Chief Justice.

Appellant was convicted of assault with a dangerous weapon. He was sentenced to three years and placed on probation for two and one-half years after service of six months' incarceration.

Appellant's first point on appeal is that the court committed prejudicial error in admitting the testimony of Trooper Ulfers which related certain obscene language used by Richard Dale Martin at the time of the assault.

The only evidence offered by the state was the testimony of Trooper Ulfers. He established that he and Troopers Hagen and Chafin had gone to McHugh Park, located on the Seward Highway south of Anchorage, in response to an anonymous tip that a drinking party was being con-

ducted there. Upon their arrival they observed a group of teenagers running into the surrounding hills. Trooper Ulfers testified that he pursued them alone and came upon a group whom he instructed to return to the patrol car. All complied with the exception of the appellant and Richard Dale Martin. Appellant and Martin hung back. Trooper Ulfer's testimony in connection with the assault is reported as follows:

A  The defendant, the man in the checkered shirt, had a beer bottle in his hand, I told him to hang on to the beer bottle and proceed to the car; we'd get this thing squared away and—and, ah, not to cause any trouble. Ah, as we started up the hill, a few steps were taken, and he took the beer bottle and threw it on a rock and broke it; I said that's all right, just keep going, ah, at that time, he got another beer bottle somewhere, it looked like he pulled it out of his back pocket or coat pocket or —he reached for it with his right hand, if I remember right and, ah, threw it at me and it did not hit me, it missed, ah, and just as it, ah, hit the ground, he reached back and got another one, held it up in this manner. Ah, I told him to turn around and get going on up the hill, I can't remember the exact conversation, it's been quite a while ago, ah, whereupon, ah, he had anoth—the other gentleman that was with him started swearing quite profusely, ah, in saying, so to speak, degrading the police force in general.

Q  What were the words that he used, Trooper Ulfers?

MR. CROFT: Your Honor, I can't see any relevancy in what words Mr. Martin * * *.

MR. BURKE: I think the relevancy, Counselor, as you well know, is the kind of words used has a complete bearing on the kind of scene and situation this was and what kind of action by this trooper was reasonable under the circumstances.

THE COURT: Objection overruled. You may proceed.

A  The other gentleman said something to the effect, ah, I cannot remember the exact words however, I can remember most of the profane words.

MR. CROFT: Your Honor, I'm going to have to object if he can't remember the exact words, we can't allow him to testify to conclusion or—or, ah, the effect of what was said, even though he testifies to—to what he remembers was said.

THE COURT: Overruled. Proceed.

A  Well, the man said: 'You dirty mother fuckin' cops are all alike and there isn't one of them—one of you who suck big greasy dicks.' And in another sentence he indicated that he felt that all police officers should be killed in some fashion.

Q  All right, you've testified the defendant had a beer bottle raised in his hand and, I believe, you said he was mad. What happened then?

A  *Ah, there was a struggle between the three of us*—ah, followed this incident. Ah, the incident took place on the side of a hill. Ah, I did most of my, ah, fighting so to speak up—up hill. Ah, I remember the defendant came at me with a beer bottle before he hit me, I hit him in the mouth with my left hand. Ah, the bottle still fell missing my head, it did hit me on the shoulder or—I think it was this shoulder if I remember correctly. *Ah, the other gentleman acted with him, ah, more of a, ah, exchange of blows took place, ah, nothing real, ah—ah, definite about it, it was just kind of a haymaker type thing on all of our parts.* However, the beer bottle, I remember, hit me at least twice and possibly more times. Ah, as the struggle took place, I could see that I was not winning, I was

losing; as he come at me again with the beer bottle, I drew my pistol and pointed it at him and told him if he— in some manner, I can't remember the exact words again but I told him if he did not stop, I would shoot him * * *. (emphasis furnished).

MR. CROFT: Your Honor, again I have to object if he can't testify to the exact words that were—that were said.

THE COURT: Overruled. Proceed.

A   I told him if he did not stop—in some manner told him that if he did not stop, I would shoot him. At this time, ah, the defendant wanted to continue however, the other fellow in * * *.

MR. CROFT: Your Honor, I have to object again to his conclusion on what the defendant wanted to do, Your Honor, I'm sure he knows * * *.·

THE COURT: Well, he can describe —he can describe his actions * * *.

MR. CROFT: He can describe his actions but that's a conclusion on his part, it calls for a conclusion as to the mental state of the defendant which obviously isn't permitted.

THE COURT: Describe his actions.

A   The other man said something to the effect that: 'If we got the dirty, ah, cop * * *' he used the same type of profane words I've used before, '* * * they've got him now, he's drawn his gun, we don't—we don't need any more, ah, we'll get—we'll fix him.' Ah, they both then proceeded up the hill before me, I reholstered my gun and we did proceed to the top of the hill.

After the direct examination was completed appellant moved for a mistrial on the ground that the obscene language had no bearing on any issue before the court; that it could not have had the effect of placing Trooper Ulfers in fear and that

with nine ladies and three men on the jury the language could only shock the jury and cause them to feel that the appellant was a foul-mouthed individual.

The court later instructed the jury that obscene language used by Dale Martin had no bearing whatsoever on the guilt or innocence of appellant for the crimes with which he was charged and that they were instructed to disregard that language, if any such language was used, entirely.

■   The trial court did not err in admitting the testimony. Martin was more than a mere bystander. He was a participant according to Trooper Ulfer's testimony. The issue was whether appellant had assaulted the officer with a beer bottle. All of Trooper Ulfer's testimony which related to the physical acts of appellant, Martin and himself, was relevant to the question of whether or not an assault had been committed. Any words spoken during the assault by any party to the assault were relevant and admissible as a part of the res gestae.[1] The fact that Martin was not himself charged with assault cannot render his remarks irrelevant under the facts of this case. Since the trial court later instructed the jury to disregard the testimony entirely, appellant received an advantage to which he was not entitled.

■   Appellant's second point on appeal is that the court erred in instructing the jury that it was not necessary that there be found present a specific intent to actually inflict death or serious bodily harm before finding appellant guilty of the offense of assault with a dangerous weapon; but that it was sufficient if there be found to exist a general criminal intent to use the weapon as the means of offering or attempting bodily injury coupled with an actual ability to inflict great bodily harm.

Appellant contends that a specific intent to inflict injury on the particular victim is required before the jury would be war-

1.   Cavazos v. State, 148 Tex.Cr.R. 322, 186 S.W.2d 990, 992 (1945); Ramar v. State, 27 Ala.App. 178, 168 So. 456, 457 (1936); Williams v. State, Okl.Cr., 373 P.2d 91, 96 (1961).

ranted in returning a verdict of guilty of assault with a dangerous weapon. Appellant points out that the Alaska statute is silent with respect to the requirement of intent and that therefore the common law requirement of an intention to do harm prevails.[2]

We do not agree. In Burke v. United States[3] the 9th Circuit Court of Appeals, relying upon the Oregon case of State v. Godfrey[4] and an earlier 9th Circuit case which construed Alaska law,[5] said:

We interpret these words of Godfrey to mean that a *general intent* to do a harm is required and is necessarily included within the definition of the term 'assault,' but not a *specific intent* to do any particular kind or degree of injury to the victim. (emphasis supplied by 9th CCA)

We adopt the above interpretation of AS 11.15.220 and hold that no error was committed.

■ Appellant also argues that the court erred in refusing to instruct the jury as follows:

Although voluntary drunkenness does not excuse crime, it may be a defense where

a specific intent is an essential ingredient of the crime charged. In such cases it is relevant to show that the degree of intoxication was such that the accused could not have formed the required intent.

Since we have held that a specific intent was not required it follows that the trial court committed no error in refusing the above instruction.

■ Appellant's last point on appeal is that the alleged errors which have been discussed in this opinion plus the cumulative effect of "other errors" resulted in a verdict contrary to the great weight of the evidence. Since we have held that no error was committed with respect to the main points briefed by appellant and since the "other points" concededly are not substantial and have not been seriously briefed, we assign no weight to this facet of the argument. Appellant's argument that seven impartial defense witnesses testified contrary to the state's sole witness is without weight since the questions of fact raised by the conflicting evidence were submitted to the jury which chose to believe the state's witness.

The judgment below is affirmed.

2. AS. 11.15.220 states:
A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

3. 282 F.2d 763, 768 (9th Cir. 1960).

4. 17 Or. 300, 20 P. 625 (1889).

5. Jackson v. United States, 102 F. 473 (9th Cir. 1900).