**Lowell Bernard BERFIELD,
Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 960.**

Supreme Court of Alaska.

Oct. 1, 1969.

Andrew E. Hoge, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, Douglas B. Baily, Dist. Atty., and H. Bixler Whiting, Asst. Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

### OPINION

DIMOND, Justice.

A jury found appellant guilty of assault with a dangerous weapon. An appeal has been taken to this court.

Appellant's conviction arose out of an incident that occurred on July 8, 1967. Shortly after midnight, David Baker and Malcolm Brown drove to the Forest Park Golf Course, near Anchorage, to meet some friends. Near the golf course they turned on to a dead-end road. After they had proceeded a short distance, they observed appellant standing in the middle of the road. They tried to drive around him but appellant stepped in the way. They stopped the car and someone opened the door and pulled Baker out. Baker fell to the ground and was kicked in the ribs and about the head. Brown testified that the kicking was done by appellant and Chris-

topher Ransom, and that appellant was wearing heavy black boots at the time.

At trial, one of the instructions given the jury was Instruction No. 17 which provided:

A dangerous weapon is a weapon which, either in its very nature or by reason of the use made of it in [the] case under consideration, is capable, when used against another, of serious bodily injury or even causing death.

The instruction is challenged as erroneous because it did not require the jury to find that before the boots could be classified as dangerous weapons the jury would have to find that serious bodily injury actually resulted from the assault. And since Baker did not suffer serious bodily injury,[1] appellant contends that his motion for a judgment of acquittal ought to have been granted.

We agree with appellant that boots cannot be classified, as a matter of law, as dangerous weapons in themselves,[2] a fact which appellee concedes. But we do not agree with appellant's further contention that where an object used in an assault is not in itself a dangerous weapon, it must be established that actual, serious bodily injury resulted from the assault before one may be convicted of assault with a dangerous weapon.

■ Almost any object, depending upon its use or attempted use, is capable of or is likely to produce bodily harm. The test is not whether serious bodily harm actually results. Rather it is whether the object was so used that serious bodily harm may have resulted.[3] The object's latent capability alone is not determinative. What is determinative is such capability, coupled with the manner of its use.[4]

■ Appellant used his boots to kick Baker about the face and head. The boots were dangerous because they were used as something to fight with—as instruments of offensive combat.[5] They were dangerous in these circumstances because their use was accompanied by the exposure or liability to serious injury to Baker's head and brain. The fact that such serious injury did not result is not controlling. It is enough that the manner that appellant used his boots to assault Baker was capable of producing serious injury. The instruction stated the law correctly—it was not erroneous.

Instruction No. 18 informed the jury of the following:

With regard to the offense of assault with a dangerous weapon, you are instructed that it is not necessary that there be found present a specific intent to actually inflict death or serious bodily harm, and it is sufficient if there be found to exist a general criminal intent to use the weapon as the means of offering or attempting bodily injury

---

1. Regarding Baker's injuries, the evidence showed that his nose and lips were bleeding, that the bleeding stopped after he went home and put a cold rag on his nose, that his upper lip was badly swollen, that he had lumps about two inches around and one-quarter of an inch high on his head, that his ribs were sore and he had a splitting headache which lasted for two days, that he did not go to a doctor, and that the only medication he took was five or six aspirins two days after the beating.

2. * * * Some weapons under particular circumstances are so clearly lethal that it becomes the duty of the court to declare them to be such as a matter of law. Of this class of weapons are guns, re-

volvers, pistols, swords, and the like, when used within striking distance of the victim * * *. 1 Wharton, Criminal Law & Procedure § 361, at 721 (1957).

3. United States v. Johnson, 324 F.2d 264, 266 (4th Cir. 1963); State v. Anderson, 245 Or. 585, 411 P.2d 259, 260 (1966).

4. United States v. Johnson, 324 F.2d 264, 266 (4th Cir. 1963).

5. "Weapon" has been defined in Webster's New International Dictionary 2892 (2d ed. 1959) as;
   An instrument of offensive or defensive combat; something to fight with; anything used, or designed to be used, in destroying, defeating or injuring, an enemy * * *.

coupled with actual ability to inflict great bodily harm.

Appellant acknowledges that this instruction would be proper as to the element of intent where the assault was alleged to have been committed with a weapon dangerous per se.[6] But he argues that where the object used in the assault is not a dangerous weapon in itself, then it is necessary for the jury to be instructed that before returning a verdict of guilty they must find that serious injury or great bodily harm did in fact occur as a result of the assault.

We have already held that there may be a conviction of assault with a dangerous weapon where the object used in the assault, not per se a dangerous weapon, is capable of or may cause serious bodily harm, considering the manner in which it was used, and that it is not necessary to establish that serious bodily harm in fact did occur. This holding disposes of appellant's contention as to Instruction No. 18. That instruction was proper and not erroneous. Similarly, this disposes of appellant's further contention that a judgment of acquittal ought to have been granted because it was not proved that serious bodily injury resulted from the assault.

Appellant also contends that it was error to deny the motion for a judgment of acquittal because there was insufficient evidence of guilt to take the case to the jury. He refers to Baker's testimony that he did not know who kicked him, and the testimony of the only other witness for the state, Malcolm Brown, to the effect that he was not sure which of three parties involved, including appellant, had been fighting with Baker.

▮▮▮▮ The test of whether a case should be submitted to the jury after a motion for

judgment of acquittal has been made is stated in Beckley v. State[7] as follows:

Considering the facts in the record most favorable to the state and such reasonable inferences as the jury may have drawn from them [the question is whether] * * * fair minded men in the exercise of reasonable judgment could have differed on the question of whether appellant's guilt had been established beyond a reasonable doubt.

Applying that test here, we find that the case was properly submitted to the jury for its determination. It is true that Baker did not know who kicked him—whether it was appellant or his two companions. But Malcolm Brown testified, both on direct and cross-examination, that he saw appellant kick Baker in the ribs and head. Based on this testimony, fair-minded men in the exercise of reasonable judgment could at least have differed, and in fact could have concluded, that appellant's guilt was established beyond a reasonable doubt. The fact that Brown was the only witness who testified as to appellant kicking Baker does not detract from that result. The testimony of a single witness, if relevant and credible, is sufficient for a conviction.[8]

Appellant was sentenced to three years imprisonment. He contends that that the imposition of such a sentence was an abuse of discretion because the trial judge, in determining the sentence to impose, placed undue emphasis on appellant's juvenile record, and because the sentence was inconsistent with sentences given to defendants convicted of assault with a dangerous weapon in other cases.

▮▮▮▮ In Bear v. State,[9] decided in 1968, this court held that it did not have jurisdiction to review a criminal sentence for an abuse of discretion. That decision was

---

6. Where one is charged with assault with a dangerous weapon, it is not necessary for the jury to find a specific intent to inflict injury before returning a verdict of guilty. All that is necessary for the jury to find is a general intent to do harm. Thompson v. State, 444 P.2d 171, 173–174 (Alaska 1968).

7. 443 P.2d 51, 59 (Alaska 1968).

8. Proffit v. United States, 316 F.2d 705, 707 (9th Cir. 1963) ; Patterson v. United States, 361 F.2d 632, 634–635 (8th Cir. 1966).

9. 439 P.2d 432, 435 (Alaska 1968).

made by a majority of a three-man court, Justice Rabinowitz dissenting. Since the decision was rendered, the number of justices on the court has been increased to five. A majority of the court as now constituted has not had occasion to express itself on the question presented in *Bear* of whether this court has jurisdiction to review criminal sentences for abuse of discretion. However, a majority of the court is of the opinion that even if we were to employ an abuse of discretion standard, the sentence imposed in this case does not constitute an excessive sentence nor do the circumstances of the sentencing demonstrate an abuse of discretion. Therefore, a further discussion of the issues passed upon in *Bear* is not warranted.[10]

Appellant also argues that there was more than abuse of discretion here—that there was an improper application of state law. He relies on AS 47.10.080(g) which provides:

No adjudication under this chapter upon the status of a child may operate to impose any of the civil disabilities ordinarily imposed by conviction upon a criminal charge, nor may a minor afterward be considered a criminal by the adjudication, nor may the adjudication be afterward deemed a conviction, nor may a minor be charged with or convicted of a crime in a court, except as provided in this chapter. The commitment and placement of a child and evidence given in the court are not admissible as evidence against the minor in a subsequent case or proceeding in any other court, nor does the commitment and placement or evidence operate to disqualify a minor in a future civil service examination or appointment in the state.

The trial judge, in commenting with regard to appellant's sentence, referred to appellant's record as a juvenile offender.

Appellant argues that in doing this the judge was either considering him a criminal by virtue of such record or was using the juvenile offenses as criminal convictions in determining the proper sentence, and that this is prohibited by the above quoted statute. Appellant concludes from this that the trial judge erroneously applied the law in imposing the sentence.

We have stated in two prior decisions that "in carrying out his difficult task of determining an appropriate sentence, the trial judge should possess the 'fullest information possible concerning the defendant's life and characteristics.' "[11] We cannot say that the judge's knowledge and consideration of appellant's record as a juvenile offender "was not potentially helpful to the trial judge in determining what sentence to impose, in deciding whether or not to grant probation, or in making a recommendation as to appropriate correctional treatment."[12]

█ A judge, of all persons, should be most cognizant of the existence and meaning of AS 47.10.080(g), and of the fact that under that statute a juvenile offender may not be considered a criminal even though he has suffered a criminal conviction. But the judge cannot simply ignore that phase of appellant's life—before he reached 18 years of age—as though it did not exist—particularly when appellant was only 21 years old when sentenced. The judge is not required to operate in a vacuum. In sentencing a 21 year old person, the life, characteristics, and background behavior of that person prior to reaching the age of 18 years might be highly relevant. It should be noted that the judge cannot consider a juvenile offense as a criminal conviction for the purpose of prescribing a mandatory sentence. But that was not done in this case. The judge's consideration of factors relating to ap-

10. In 1969 the legislature expressly conferred upon this court the authority to review criminal sentences. SLA 1969, ch. 117. This statute applies to sentences imposed after January 1, 1970.

11. Egelak v. State, 438 P.2d 712, 717 (Alaska 1968) ; Thompson v. State, 426 P.2d 995, 999–1000 (Alaska 1967).

12. Egelak v. State, 438 P.2d 712, 717 (Alaska 1968).

pellant's life, characteristics, background and behavior prior to reaching the age of 18 years does not mean that he considered appellant a criminal or that he was using the juvenile offenses as criminal convictions in determining the sentence to impose.[13]

The judgment is affirmed.

---

13. Commonwealth ex rel. Hendrickson v. Myers, 393 Pa. 224, 144 A.2d 367 (1958), affirming, 182 Pa.Super. 169, 126 A.2d 485 (1956).