**Robert Dewain MILL, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 2692.**

Supreme Court of Alaska.

Oct. 20, 1978.

Edgar Paul Boyko, Edgar Paul Boyko & Associates, Anchorage, for appellant.

Glen C. Anderson, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and CONNOR and BURKE, JJ.

## OPINION

CONNOR, Justice.

Appellant seeks to have his conviction for assault with a dangerous weapon reversed. He contends (1) that the crime of assault with a dangerous weapon should be redefined as a crime requiring specific intent; (2) that a defense of diminished capacity should be applicable to crimes requiring only general criminal intent; (3) that the prosecutor made an improper final argument which the trial court refused to mitigate by a curative instruction; and (4) that his sentence should be reduced.

Appellant Mill started a small logging business in Palmer in 1970. In 1973 he hired Douglas Vincent, an independent trucker, to haul lumber from Canada to the mill in Palmer. In May, 1973, appellant arranged with Vincent to have four truckloads of lumber transported from Canada, at $600 per load, and he paid Vincent $2400 cash in advance. Vincent delivered two and one-half truckloads as agreed, but a supplier's shortage delayed his delivery of the rest.

At this time, Mill began to suspect that Vincent was trying to ruin his business. Mill testified at trial that after Vincent had threatened him with the information that the banks were going to withhold capital and also orally threatened to put him out of business, he became suspicious that Vincent had begun to deal directly with Mill's Canadian supplier. Mill further testified that he felt tremendous pressure was being applied to him because he was battling against a state timber sale which excluded small, independent loggers. He stated that he had

been offered bribes to cease his opposition to the sale and testified that his instigation of a grand jury investigation of the matter had resulted in the burning of two of his mills by arsonists and the harassment of his wife and family by threatening telephone calls. He also emphasized the financial importance of the fourth truckload of lumber to his business.

On July 6, 1973, Vincent returned with Mill's last truckload of Canadian lumber. He drove past appellant's Palmer mill with the load, honked his horn, and made an insulting gesture out the window. Mill went out in search of Vincent and the load of lumber and found them at another man's mill.

Mill approached a cabin where he saw Vincent, Vincent's bodyguard, and two other loggers inside. Vincent emerged from the cabin at Mill's beckoning and, when questioned about the lumber, refused to turn it over or to return Mill's money. Vincent then rejoined the others inside the cabin.

At that point, Mill took his rifle out of his truck and positioned it on the window of the cabin. He told Vincent that he wanted to talk and racked the gun when Vincent hesitated. When Vincent stepped over the threshold of the cabin, Mill ordered him to stop his approach. Vincent kept walking toward Mill and, after giving a second unheeded order to stop, Mill shot Vincent in the leg. Mill then stood over the wounded man with his gun and ordered him to write a check for the amount he owed on the lumber. Once he had the check in hand, Mill called the police and an ambulance.

Mill was brought to trial on charges of assault with intent to kill, wound and maim. The jury found Mill guilty of the lesser included offense of assault with a dangerous weapon. The trial court sentenced appellant to one year in prison.

## I.

Appellant first contends that we should overrule our decision in *Thompson v. State*, 444 P.2d 171 (Alaska 1968), and hold that the crime of assault with a dangerous weapon requires a specific intent to do bodily injury to the victim. AS 11.15.220, which defines the offense of assault with a dangerous weapon, as it read at the time of the offense, is itself silent on the issue of intent:

"A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more that 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1000 nor less than $100." [1]

Since AS 11.15.220 was modeled on Oregon's statute, the Ninth Circuit Court of Appeals, acting as Alaska's territorial appellate court, adopted the Oregon Supreme Court's construction that the statute requires no specific intent. *Burke v. United States*, 282 F.2d 763, 768 (9th Cir. 1960). In following *State v. Godfrey*, 17 Or. 300, 20 P. 625 (1889), the *Burke* court stated:

"We interpret these words of Godrey to mean that a *general intent* to do a harm is required and is necessarily included within the definition of the term 'assault,' but not a *specific intent* to do any particular kind or degree of injury to the victim." (original emphasis)

282 F.2d at 768. We adopted that interpretation in *Thompson v. State, supra.* The trial court in the instant case, relying on our decision in *Thompson*, instructed the jury that it need not find that Mill "specifically intended to actually inflict serious bodily injury" in order to convict him of assault with a dangerous weapon. Appellant claims that this was reversible error.

In urging that we overrule *Thompson*, appellant contends that in analyzing

1. AS 11.15.220 was subsequently amended to read:

"A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment for not more than 10 years nor less than six months, or by a fine of not more than $1000 nor less than $100, or both."

am § 2 ch. 139 SLA 1976.

what constitutes a dangerous weapon, we have relied principally upon the aggressor's specific intent to do bodily harm, citing *Thomas v. State*, 524 P.2d 664 (Alaska 1974). He argues that because we have characterized an otherwise innocuous object as a dangerous weapon, when the aggressor used it with the intent to injure his victim, a specific intent to do bodily injury is an integral part of the crime of assault with a dangerous weapon. However, appellant has misconstrued our earlier opinions on this subject. In holding that a telephone could qualify as a dangerous weapon in *Thomas*, we relied on our earlier decision in *Berfield v. State*, 458 P.2d 1008 (Alaska 1969), in which a pair of boots was held to be a dangerous weapon under AS 11.15.220. In *Berfield* it was not the intent of the person wielding the boots to inflict bodily injury on his victim which persuaded us that the boots were dangerous weapons; instead it was the *manner* in which the boots were used:

> "The boots were dangerous because they were used as something to fight with—as instruments of offensive combat. They were dangerous in these circumstances because their use was accompanied by the exposure or liability to serious injury to Baker's head and brain. The fact that such serious injury did not result is not controlling. *It is enough that the manner that appellant used his boots to assault Baker was capable of producing serious injury.*" (emphasis added) (footnote omitted)

458 P.2d at 1009. Thus, we have not previously looked to the aggressor's specific intent in examining what qualifies as a dangerous weapon. Appellant's argument on this point does not persuade us.

Appellant next makes a policy argument that *Thompson* should be overruled. His argument is based on the Model Penal Code and the trend in other states to classify aggravated assault as a specific intent crime.

Section 211.1(2) of the Model Penal Code provides in part:

> "(2) *Aggravated Assault.* A person is guilty of aggravated assault if he:

> (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or

> (b) *attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon.*" (emphasis added)

ALI Model Penal Code § 211.1(2) (Proposed Official Draft 1962). The state, focusing on the language "purposely *or* knowingly causes bodily injury," argues that subsection (b) of this provision does not always require a specific intent to injure the victim. The state urges that although the term "purposely" implies the necessity for a specific intent to cause injury, the term "knowingly" requires only scienter or general intent. The Model Penal Code defines "knowingly" as follows:

> "*Knowingly*

> A person acts knowingly with respect to a material element of an offenses when:

> \* \* \* \* \* \*

> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result."

ALI Model Penal Code, *supra*, at § 2.02(2)(b). In his treatise on criminal law, Perkins notes that both "purpose" and "knowledge" as used in the provision of the Model Penal Code can constitute intent:

> "Intent includes those consequences which (a) represent the very purpose for which an act is done (regardless of likelihood or occurrence), or *(b) are known to be substantially certain to result (regardless of desire).*"

R. Perkins, *Criminal Law* at p. 747 (1969). Thus it appears clear that the Model Penal Code provision dealing with assault with a deadly weapon does require the specific intent to do bodily injury.

It is true that many states define assault with a dangerous weapon as a specific intent crime. *See Intent to do physical harm as essential element of crime of assault*

*with deadly or dangerous weapon*, Annot., 92 A.L.R.2d 635 (1963). But the requirement of an intent to do physical harm normally derives from a specific statutory provision, rather than from judicial construction.

Although appellant argues that several other courts have imposed a specific intent requirement upon a statute which was otherwise silent on the issue of intent, the cases which he cites are not squarely in point.[2] The state argues that the Alaska statute's silence on the issue of intent should not lead us to impose a specific intent requirement, since the legislature has denoted specific mental states when it has found them to be appropriate. One of the statutes cited by the state in support of this argument is AS 11.15.140, which defines the crime of mayhem:

> *Mayhem.* A person who, *with malicious intent to maim or disfigure*: . . .
>
>    *    *    *    *    *    *
>
> (3) assaults another person with a dangerous instrument, . . . ." (emphasis added)

Also cited by the state as provisions in which the legislature has specified the mental state required are the statutes prohibiting shooting, stabbing or cutting with intent to kill, wound, or maim, (AS 11.15.150); assault with intent to kill or commit rape or robbery (AS 11.15.160); and assault while armed (AS 11.15.190, requiring "intent to prevent the other person from resisting or defending himself.")

In summary, appellant urges that we act where the legislature has not and require an element of specific intent in the crime of assault with a dangerous weapon. We are unpersuaded. No court has implied such a requirement from a statute as silent as ours, and we have no reason to overrule our

earlier decision in *Thompson v. State, supra.* On this point there was no error.

## II.

Appellant contends that the jury should have been permitted to consider evidence of his diminished mental capacity as a defense to the general intent crime of assault with a dangerous weapon.

We have previously drawn a distinction between the defense of mental disease or defect, which absolves a defendant from criminal responsibility for any type of crime, and the doctrine of diminished capacity, which acts only to negate a specific mental element or intent necessary to the charged offense.

> "The diminished capacity doctrine is based on the theory that while an accused may not have been suffering from a mental disease or defect at the time of his offense, sufficient to absolve him totally of criminal responsibility, the accused's mental capacity may have been diminished by intoxication, trauma, or mental disease to such an extent that he did not possess a specific mental state or intent essential to the particular offense." (footnote omitted)

*Johnson v. State,* 511 P.2d 118, 124 (Alaska 1973). The doctrine of diminished capacity, then, has a limited function.

Our statute on the "insanity" defense, AS 12.45.083, provides that a person cannot be held responsible for his criminal conduct if at the time of the conduct, as a result of mental disease or defect, "he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." If the doctrine of diminished mental capacity were available to show the defendant's lack of ability to form a general intent to

**2.** In *State v. Fitzpatrick*, 149 Mont. 400, 427 P.2d 300, 301–02 (1967), the Montana Supreme Court held that specific intent to cause physical harm was *not* an element essential to the crime of assault with a deadly weapon, citing the Alaska case of *Burke v. United States, supra.* In *People v. Katz*, 290 N.Y. 361, 49 N.E.2d 482, 484 (1943), the court held that the use of the term "willfully and wrongfully" in the statute

should be construed to require specific intent. In *Green v. Turner*, 409 F.2d 215 (10th Cir. 1969), the Utah statute being interpreted provided that the offense must be committed "with intent to do bodily harm and without just cause or excuse, or when no considerable provocation appears, or when the circumstances show an abandoned and malignant heart."

perform a prohibited act, it would be functionally indistinguishable from the defense of mental disease or defect and would serve only to lessen the degree of mental incapacity necessary to constitute a complete "insanity" defense. The defendant would no longer have to prove that he was substantially incapable of making choices or conforming his actions to law. He would need only prove that his mental capacity had been in some lesser way diminished.

Appellant argues that

"[A] person may be suffering from a mental defect to such an extent that he is incapable of forming even the general intent to do the prohibited act. [This] analysis is applicable to diminished capacity where the illness has such a grasp of the mind that the accused has no possible means of controlling his behavior at the time the action was taken."

Where, as appellant hypothesizes, the accused is substantially unable to control his behavior and conform it to the requirements of the law, he fits within the framework of the defense of mental disease or defect and need not rely on diminished capacity.

Since the discussion of diminished responsibility in *Johnson* is based on California's formulation of the doctrine in *People v. Conley*, 64 Cal.2d 310, 49 Cal.Rptr. 815, 411 P.2d 911, 914 (1966), cited in *Johnson*, 511 P.2d at 124, a discussion of California's approach to this matter may be helpful. California has held assault with a deadly weapon to be an offense requiring only general criminal intent, *People v. Rocha*, 3 Cal.3d 893, 92 Cal.Rptr. 172, 479 P.2d 372, 376 (1971). It has also held that the defense of diminished capacity in the form of irresistable impulse "is received not as a 'complete defense' negating capacity to commit any crime but as a 'partial defense' negating specific mental state essential to a particular crime." *People v. Noah*, 5 Cal.3d 469, 478, 96 Cal.Rptr. 441, 447, 487 P.2d 1009, 1015 (1971). Recently, the Supreme Court of California noted with approval these two previous decisions in stating that "assault with a deadly weapon is a general intent crime and diminished capacity is not a defense to general intent crimes." *People v. Gauze*, 15 Cal.3d 709, 718, 125 Cal.Rptr. 773, 778, 542 P.2d 1365, 1370–71 (1975) (citations omitted) (dictum).

■ A defendant whose mental capacities have been diminished may not possess a certain specific mental state or intent essential to the crime. If the doctrine of diminished capacity due to a mental illness or defect were available to show lack of general intent to do an act, it would have the same function as the defense of mental disease or defect. We are not aware of any jurisdiction in which diminished capacity can be invoked to negate general criminal intent by a defendant who does not plead mental disease or defect as a defense. We hold that the trial court did not err in giving its jury instructions on this subject.

### III.

Although appellant was indicted for shooting with intent to kill, wound or maim, the jury was instructed that it could convict him of the lesser included offense of assault with a dangerous weapon. In its closing argument, the state argued that Mill committed three separate assaults with a dangerous weapon: (1) when he pointed the gun through the window at the men inside the cabin; (2) when he actually shot Vincent in the leg; and (3) when he stood over Vincent with the gun until Vincent wrote him a check. The state argued that any of those incidents could support a conviction of assault with a dangerous weapon.

The thrust of appellant's argument is that since he was indicted only for shooting with intent to kill, wound or maim, he could only be convicted of the assault with a dangerous weapon which was a lesser included offense of the shooting. It is argued that pointing the gun at Vincent through the window or after Vincent had been shot were separate actions which had never formed the basis of any criminal charge against Mill. He contends, therefore, that

they could not amount to lesser offenses included within the shooting charge.[3]

■ We note that the indictment set forth the time, place, victim, and offense charged. That offense necessarily included assault with a dangerous weapon. Appellant cannot claim that he was unfairly surprised by the prosecution's argument to the jury, for appellant himself testified to the events which preceded and followed the shooting. We view these events as a series of acts, in a short and continuous sequence, which amount to a unitary criminal episode.[4] We believe that it was error for the court to permit the state to argue that there were three separate assault with a dangerous weapon. In the context of this case, however, in which were was no dispute as to the actual facts and no conceivable way that the jury could have been confused, we conclude that the error was harmless.[5]

## IV.

■ Mill was sentenced to five years imprisonment, with four suspended, and with the recommendation that Mill be considered for parole after one-third of his one year service. Appellant claims that this sentence is excessive, given his lack of any prior record and the unique circumstances of the shooting. Our review of the record reveals that the court properly weighed the criteria of *State v. Chaney*, 477 P.2d 441 (Alaska 1970). In our opinion the sentence was not clearly mistaken. Similarly, we are

not convinced by the state's argument that the sentence was too lenient.

AFFIRMED.

RABINOWITZ and MATTHEWS, JJ., not participating.

BURKE, Justice, dissenting in part.

I dissent from the holding set forth in part III of the majority opinion.

I begin with a premise that is a fundamental rule of law: One may be prosecuted and convicted for only those crimes that have been charged against him. The importance of this rule cannot be denied; at the very least it provides a means of ensuring that in every criminal action the defendant will know precisely what conduct he or she must seek to explain, refute, or justify.[1] Thus the rule gives substance to that constitutional ideal of due process which affords every member of society the right to be given notice and an opportunity to be heard before being punished for a crime. *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297, 308 (1973); *Cole v. Arkansas*, 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed.2d 644, 647 (1948); *Alto v. State*, 565 P.2d 492, 495 (Alaska 1977). Article I, section 11 of the Constitution of Alaska specifically provides that "[t]he accused is entitled to be informed of the nature and cause of the accusation."

This is not to say that when one is charged with an offense he or she must always be either convicted of that specific crime or fully exonerated for his or her acts. On the contrary, where the elements

---

3. Prior to the commencement of closing arguments, appellant's attorney objected to the state arguing three separate incidents of assault with a dangerous weapon and, after the argument, requested that the court give a curative instruction.

4. As the state points out, to accept appellant's argument would mean that every movement of a rifle barrel toward or away from a prospective victim would require a distinct criminal charge. If this case were presented to us in a converse form, i. e., whether appellant's conduct could sustain three separate convictions, we would indeed have difficulty in upholding such a result. Apart from double jeopardy considerations, *see Whitton v. State*, 479 P.2d

302 (Alaska 1970), the rule of lenity would come into play. In marginal cases doubts should be resolved against turning a single transaction into multiple offenses. See *Bell v. United States*, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955); *Ladner v. United States*, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1957).

5. *Love v. State*, 457 P.2d 622 (Alaska 1969).

1. Alaska Crim.R. 7(c) states in part:
    The indictment or the information shall be a plain, concise and definite written statement of essential facts constituting the offense charged.

of the charged offense necessarily subsume the elements of one or more lesser offenses it is logically implied that those lesser offenses have been charged as well. Thus, while the state may fail to prove that the conduct[2] of the defendant satisfied all the elements of the explicitly charged offense, it may be successful in proving that that conduct did amount to what is termed a lesser included offense. As we observed in *Jennings v. State*:[3]

> [Alaska] Criminal Rule 31(c) provides that "The defendant may be found guilty of an offense necessarily included in the offense charged . . . ." An offense is necessarily included in the offense charged where the former is of less magnitude than the latter but the gravamen of the two offenses is the same, or where one could not have committed the offense charged without having also committed the offense of lesser magnitude. [Footnotes omitted.]

In this case Mill was charged with only one criminal act as a result of his conduct. That offense—shooting with intent to kill, wound or maim—cannot be committed without the offender also committing the offense of assault with a dangerous weapon.[4] Therefore it was possible for the jury to find that Mill lacked the specific intent to kill, wound or maim but that his act of shooting the rifle did constitute the lesser assault offense. Consequently, it was entirely permissible for the prosecutor to argue to the jury that the shooting would support a conviction for either offense.

There would now be no question that Mill was convicted of an offense for which he was charged if the assistant district attorney had so confined his argument. Regrettably he did not do so. Instead, he went on to argue, over timely objection by defense counsel that Mill committed two other assaults with a dangerous weapon during the series of events surrounding the actual shooting, stating:

> Now, he was guilty of assault with a deadly weapon, or a dangerous weapon at the moment he came up there to that window and pointed that gun at Vincent. At that point he was guilty of an ADW. . . . When he stood over the man and made him write out a check, there's another ADW right there. . . . Of course, when he shot the fellow, if you find that he didn't have the intent to kill, wound, or maim, there's another ADW right there. . . .

In so doing the state's attorney, in my opinion, committed an obvious and fundamental error; that is, he urged Mill's conviction for offenses that were never charged. Although this error might have been cured by instructing the jury to disregard the improper portions of the argument, a request by defense counsel for such an instruction was denied. As a result, it is now impossible to ascertain whether the jury's verdict was based on a determination that Mill committed a lesser included offense of the act with which he was charged, or a determination that he had committed a separate assault that was never charged. Therefore, I believe that we are required[5] to reverse his conviction and remand the case for a new trial.

Otherwise, I concur.

---

2. *Conduct* here refers to both the mental and physical components of that behavior specified as criminal in the indictment.

3. 404 P.2d 652, 655 (Alaska 1965).

4. *See* footnotes 1 and 2, *supra.*

5. Alaska Crim.R. 31(a) requires the verdict of the jury in criminal cases to be unanimous.