Commonwealth ex rel. Hendrickson, Appellant, *v.* Myers.

Submitted September 27, 1956.    Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Robert E. Hendrickson,* appellant, in propria persona.

*Donald W. VanArtsdalen,* District Attorney and *J. Justus Bodley,* Assistant District Attorney, for appellee.

OPINION BY HIRT, J., November 13, 1956:

These are the facts, taken from relator's petition in this habeas corpus proceeding: Relator was arrested on August 10, 1946, on a number of separate charges of burglary and the larceny of an automobile and other property. While awaiting trial on these charges he escaped from the Bucks County Prison on August 20, 1946 but was recaptured the same day but not before he had stolen another automobile from a private garage. These offenses are the subjects of Bills 94 and 90. Thereafter on September 4, 1946, relator entered pleas of guilty in open court to four indictments embodying the charges upon which he was originally arrested and on additional bills charging him with prison breach and burglary. The late Judge CALVIN S. BOYER who received the pleas sentenced him on Bill 91, one of the burglary charges, to a term of imprisonment in the Eastern State Penitentiary of not less than 3 nor

more than 10 years. He sentenced relator also to a further and consecutive term, in the Eastern State Penitentiary of not less than 1 nor more than 2 years on Bill 94, the prison breach charge. Sentence was suspended on all other bills to which relator had pleaded guilty.

The two sentences apparently were lumped for parole purposes in accordance with the Act of June 25, 1937, P. L. 2093, 19 PS §897, and between September 4, 1946, the date of sentence, and April 11, 1956 relator was twice paroled by the Pennsylvania Board of Parole, once on February 12, 1951 and again on June 23, 1954. He violated the conditions of these parole orders and in each instance was returned to prison. On the first occasion he was at least a technical parole violator. On September 13, 1955, during the period of his second parole he was convicted of violation of the Uniform Firearms Act of May 21, 1943, P. L. 485, 18 PS §4628, et seq., and was sentenced to the Bucks County Prison for 30 days. After serving this sentence he was returned to the penitentiary as a convicted parole violator to serve the remaining terms of his 1946 sentences. These sentences, with credits for all time actually served plus the "street time" of the first parole, as computed on the prison records will expire on December 3, 1959. Cf. Act of August 24, 1951, P. L. 1401, 61 PS §331.21a.

On relator's petition in this proceeding, filed on April 11, 1956, the respondent was ruled to show cause why a writ of habeas corpus should not issue. On May 11, 1956, the date set for hearing, relator was brought into court. He there was represented by counsel of his own choice and he testified at length.

In his petition he had contended that prison breach, a misdemeanor, is punishable only by simple imprisonment. And accordingly he averred that his sentence

to the Eastern Penitentiary for that offense was illegal. This contention overlooked the provision of §309 of the Act of June 24, 1939, P. L. 872, 18 PS §4309, for sentence of prison breach to ". . . imprisonment, by separate and solitary confinement at labor . . ." if the charge on which such person stood committed was so punishable. Relator's sentence of from 1 to 2 years in the Eastern Penitentiary was proper, as is now conceded by his counsel, since the charge on which he was awaiting trial was burglary and other felonies punishable by separate and solitary confinement at labor.

Relator contended further that there was a denial of due process in that he was not represented by counsel at the time he pleaded guilty and was sentenced. The record shows that he made no request for counsel before entering his pleas of guilty to the four indictments. Even assuming that the judge did not advise the relator as to his right to court-appointed counsel, he cannot now complain under the circumstances. In general the failure of the court to provide counsel when none is requested, does not constitute a denial of due process. And to constitute such denial the burden is on one who asserts it to show that because of the lack of counsel to advise him, an ingredient of unfairness actively operated in the process that resulted in his conviction and subsequent confinement. *Com. ex rel. Hallman v. Tees,* 179 Pa. Superior Ct. 490, 118 A. 2d 273; *Com. ex rel. Henderson v. Kruger,* 180 Pa. Superior Ct. 374, 119 A. 2d 870. There was no element of prejudice or unfairness in this instance in the failure of the court to appoint counsel for relator. And under the circumstances *Uveges v. Commonwealth of Pennsylvania,* 335 U. S. 437, 69 S. Ct. 184, does not rule this case. Relator was 21 years and 9 months of age when he entered his pleas. The charges were numerous but they were not

complicated, as he now contends. And there is no evidence that he did not thoroughly understand their import or that he was ignorant of his rights. In reality the charges were factually simple. Bill 91, on which relator was sentenced, charged that he entered a garage of one Albert Hiller and stole a Buick automobile therefrom. Bill 92 charged the relator with larceny of an inspection sticker from another automobile. Bill 93 charged the felonious entry of another garage and the larceny therefrom of a wheel, a tire and tube. When arrested the automobile and these stolen articles were all found in relator's exclusive possession. Moreover when he escaped from jail he stole yet another automobile which subsequently became the subject of Bill 90. Relator freely admitted the commission of these offenses at the time he entered his pleas and he does not now deny his guilt as to any of them. Relator was cognizant of the signifance of his criminal acts; he knew what he was doing when he pleaded guilty to the charges.

At the time of sentence relator's juvenile court record was brought to the attention of Judge BOYER, the sentencing judge. In this there was no error. He had been brought into the juvenile court on one serious charge. He was found delinquent because of a burglary committed by him in 1942 when he was more than 17 years old, and was placed on probation. Section 19 of the Act of June 2, 1933, P. L. 1433, 11 PS §261 provides: "The disposition of a child or any evidence given in a juvenile court shall not be admissible . . . against the child in any case or proceeding in any other court." The juvenile court in this instance was the Court of Quarter Sessions of Bucks County. 11 PS §243. The above prohibition of the Act had no application here. The judge was entitled to all of the material facts to

174

inform him as to what kind of an offender he was dealing with to assist him in determining the appropriate penalty. *Commonwealth v. Petrillo*, 340 Pa. 33, 47, 16 A. 2d 50. Prior to sentence relator admitted the larceny of still another automobile in 1945 in Washington, D.C. and his apprehension in Connecticut, although he stated that the charges against him in that instance were "dropped." Cf. *Com. ex rel. Reichelderfer v. Burke*, 176 Pa. Superior Ct. 215, 218, 107 A. 2d 578. In *Com. ex rel. Czarnecki v. Stitzel*, 179 Pa. Superior Ct. 80, 82, 83, 115 A. 2d 805, Judge Woodside's statement is almost axiomatic to this effect: "A sentencing judge . . . cannot with justice to . . . the public ignore completely the boy's conduct during the time he was within the age of the juvenile court law."

Finally, relator contended that what was said by the judge[1] after the testimony had closed and immediately before the imposition of sentences disclosed prejudice and hostility in the sentencing judge which in the absence of counsel constituted a denial of due process on

---

[1] Judge Boyer immediately before sentencing relator said to him: "This Court tried to help you many years ago by placing you on probation when you were charged with burglary as a boy. You committed a serious crime there . . . This Court was so anxious to help you and to make a man of you that instead of sending you away, as we might have done, we placed you on probation in charge of Miss Bright, the Probation Officer. We did not hear any more about you after that until this occurrence here. That should have taught you several things. It should have taught you in the first place, that it is foolish, it is stupid, it is just plain dumb, to commit crimes. There is nothing gained by it. You are no richer than you were because of these crimes. You haven't won any respect from anybody. Everybody that knows you will now despise you. They will look down upon you. Everybody of any intelligence, everybody of any standing or decency now looks down upon you as just a stupid, common criminal. Now can you think of anything that could be said in your own favor? I can't think of anything."

the authority of *Townsend v. Burke*, 334 U. S. 736, 68 S. Ct. 1252. To quote from *Commonwealth ex rel. Townsend v. Burke*, 361 Pa. 35, 39, 63 A. 2d 77: "What invalidated the proceeding in the . . . case was the improper conduct of the trial judge which consisted of his making facetious remarks, concerning the defendant's prospective penal servitude, in connection with the imposing of sentence, and of reading from a list containing five separate criminal charges against the defendant at former times when, actually, in three out of the five cited instances the charges had either been dismissed by the magistrate or the accused had been found not guilty." In the present case what was said by Judge BOYER was true and he was serious in saying it. In commenting on his statement to relator, Judge SATTERTHWAITE, who knew Judge BOYER well, said: "Judge BOYER's remarks far from being facetious, were characteristically phrased in terms of almost personal concern that relator had not seen fit to profit by the prior consideration given him by the juvenile court probation. We cannot believe that there was any element of . . . unfairness present in his mind." We see no objection to a sentencing judge's expression of his reaction to a criminal case after the record is made and in explanation of the sentence he is about to impose. The lack of prejudice in this instance is indicated also by the moderation in the penalty imposed. The serious character of the offenses well might have justified longer terms of imprisonment under the circumstances.

Order affirmed.