437 A.2d 1246

**COMMONWEALTH of Pennsylvania,**

v.

**Donald JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 1, 1981.

Filed Dec. 11, 1981.

Petition for Allowance of Appeal Denied March 26, 1982.

Donald R. Calaiaro, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth appellee.

Before WICKERSHAM, BECK and WIEAND, JJ.

WICKERSHAM, Judge:

Following a jury trial before the Honorable George H. Ross of the Court of Common Pleas of Allegheny County,

appellant, Donald Johnson, was convicted of burglary, receiving stolen property and possessing the instruments of crime. Thereafter, Judge Ross sentenced appellant to a term of imprisonment of one and one-half to three years. Appellant then filed a timely motion to reconsider sentence [1] which Judge Ross denied. This appeal was taken from the judgment of sentence.[2]

At trial, Bernard Hughes, a fifteen year veteran police officer for the City of Pittsburgh, testified that he received a call at about 12:30 a. m. on April 28, 1980, that there was an alarm coming in at 943 Liberty Avenue in the downtown business area of Pittsburgh. The Fairview bookstore, a store dealing in pornographic material, is located at that address. Hughes testified that he and Officer Lamb, arrived in their police car about two minutes after they received the call and observed Detective Martine standing in front of the store. They proceeded to the rear and discovered a burglary in progress.

A    As we entered into Exchange Way, there was a car about a half a car length into Exchange Way. The trunk was open in this vehicle. It was '72 Cadillac Coupe, and the color was blue, and the trunk was open. There were two black males standing at the rear of the vehicle, and they were placing garbage containers, green plastic garbage containers into the trunk of this automobile. They stopped their movements as we pulled in behind them. The contents of the trash containers were evident, they were visible; they were T.V. video cassettes. Both myself and Officer Lamb exited the police vehicle. I said, "What's going on here?" to both actors who were

1.  Pa.R.Crim.P. 1410 provides that a motion to modify sentence shall be filed within ten days after imposition of sentence.

2.  Despite the filing of a motion to modify sentence under Pa.R. Crim.P. 1410, an appeal must still be taken from the judgment of sentence. *Commonwealth v. Lee*, 278 Pa.Superior Ct. 609, 420 A.2d 708 (1980); Pa.R.Crim.P. 1410, Comment.

standing at the rear of the trunk of the vehicle. And I said, "What's going on?" And the defendant walked to the—there was a parked vehicle alongside of us—he walked in front of that parked vehicle. I drew my service revolver and told him hold it right there. He ran between the automobile and the wall of the building there, and he was on the other side of this vehicle. He ran past me, and I told him halt. He ran out onto Tenth, and tripped on the curb. He fell to the street. I said, 'Hold it right there,' and I ran over to grab him, but he got up very quickly and began running down Tenth Street to Liberty Avenue with myself in pursuit on foot. I had a walkie-talkie with me, and I relayed his description as I chased him across Liberty Avenue down William Penn Way towards Seventh. At no time did I lose sight of the defendant. He turned up Liberty and headed toward Grant Street. I continued, I turned the corner in pursuit of him, and he got up to Grant Street and went over across Grant to where the U.S. Steel Building is, and he ducked down behind parked cars. I saw him drop down, and I radioed. 'There he is,' because 2–3 car had just come down Grant. I said, 'There he is, he's down behind the cars.' They got out of their vehicle, ran over to him and grabbed him, and we arrested him.

Record at 14–16.

On this appeal it is the contention of the appellant that he was denied his constitutional right to due process when the sentencing judge considered appellant's juvenile record.[3] There is no merit to this contention and we will affirm the judgment of sentence.

**3.** At the sentencing hearing held September 19, 1980, before Judge Ross, Diane Quinlan, Esquire, from the office of the public defender, appeared on behalf of and along with Donald Johnson. She had been trial counsel as well. The sentencing transcript included the following:

MS. QUINLAN: Your Honor, Mr. Johnson has one prior offense, that was simple assault. He was put on probation for that offense. While he was on probation, he did report regularly.

THE COURT: He spent some time in Greensburg.

In *Commonwealth v. Stitzel*, 179 Pa.Superior Ct. 80, 115 A.2d 805 (1955), Judge Woodside, speaking for the Superior Court of Pennsylvania, said:

> A sentencing judge, and others dealing with the sentence, cannot with justice to the boy or the public ignore completely the boy's conduct during the time he was within the age of the juvenile court law.

Id., 179 Pa.Super. at 83, 115 A.2d at 806.

Again in *Commonwealth ex rel. Hendrickson v. Myers*, 182 Pa.Superior Ct. 169, 126 A.2d 485 (1956), we said:

> MS. QUINLAN: I'm sorry. After three months, he was put on parole and he did report to his Parole Officer regularly. He had no prior convictions except for the simple assault. Now, as far as the motor vehicle fines, the pre-sentence report discusses, he had a hearing on that and was fined on April 8; he was arrested on this charge on April 28th. So, in terms of payment of those fines, it wasn't possible for Mr. Johnson to make a payment bec[au]se he was in jail.
>
> Mr. Johnson tells me that he has family here in Pittsburgh and that if he were to be released, he would live with his family and attempt to get a job. His old job was that of a laborer for a contractor in Shadyside. If he were to get that employment, then he could make an attempt at paying the fines that were imposed on him. In light of those facts and other than this simple assault—
>
> THE COURT: Retail theft and simple assault. That's how he got into this assault, while he was stealing out at the A & P over at Allegheny Center Mall. He has seven appearances as a juvenile before he became an adult. What he has done is continued where he left off there.
>
> Does the District Attorney have anything?
>
> MR. RUDDY: I have no recommendations or comments.
>
> THE COURT: It appearing to this Court that this individual has a long record of involvement with the law and that while he was on parole from another case he violated the criminal laws by committing this offense; that while a juvenile he committed seven violations of the law—so, therefore, at Complaint No. CC 8003141A, wherein the actor was found guilty by a jury of burglary, receiving stolen property and possession of instrucments [sic] of crime, on the first count of the indictment, it is the sentence of the Court: And now, this 19th day of September, 1980, the Defendant appearing in open Court with counsel, is sentenced to undergo an imprisonment of not less than one and one half years nor more than three years and stand committed and be sent to the Western Correctional, Diagnostic and Classification Center of Pennsylvania. The date of last commitment being as of when he was incarcerated on these charges.

At the time of sentence relator's juvenile court record was brought to the attention of Judge Boyer, the sentencing judge. In this there was no error. He had been brought into the juvenile court on one serious charge. He was found delinquent because of a burglary committed by him in 1942 when he was more than 17 years old, and was placed on probation. Section 19 of the Act of June 2, 1933, P.L. 1433, 11 P.S. § 261 provides: 'The disposition of a child or any evidence given in a juvenile court shall not be admissible as evidence against the child in any case or proceeding in any other court.' The juvenile court in this instance was the Court of Quarter Sessions of Bucks County. 11 P.S. § 243. The above prohibition of the Act had no application here. The judge was entitled to all of the material facts to inform him as to what kind of an offender he was dealing with to assist him in determining the appropriate penalty. *Commonwealth v. Petrillo*, 340 Pa. 33, 47, 16 A.2d 50. Prior to sentence relator admitted the larceny of still another automobile in 1945 in Washington, D.C. and his apprehension in Connecticut, although he stated that the charges against him in that instance were 'dropped.' *Cf. Com. ex rel. Reichelderfer v. Burke*, 176 Pa.Super. 215, 218, 107 A.2d 578. In *Com. ex rel. Czarnecki v. Stitzel*, 179 Pa.Super. 80, 82, 83, 115 A.2d 805, 806, Judge Woodside's statement is almost axiomatic to this effect: 'A sentencing judge * * * cannot with justice to * * * the public ignore completely the boy's conduct during the time he was within the age of the juvenile court law.'

*Id.*, 182 Pa.Super. at 173-74, 126 A.2d at 487.

More recently our court speaking through Judge Cercone (now President Judge) reaffirmed our holding that the prior juvenile record of a defendant may be considered by the sentencing judge when imposing sentence. *Commonwealth v. Riviera*, 254 Pa.Superior Ct. 196, 385 A.2d 976 (1978).

Rule 1403 of the Pennsylvania Rules of Criminal Procedure, entitled "Aids in Imposing Sentence" provides that the

Sentencing Record at 2–4.

sentencing judge may, in his discretion, order a pre-sentence investigation report in any case, which report shall include information regarding the circumstances of the offense and the character of the defendant sufficient to assist the court in determining sentence.

Indeed, the Sentencing Code[4] provides in § 9722 the following grounds which shall be accorded weight by the court in determining the appropriate sentence:

The following grounds, while not controlling the discretion of the court shall be accorded weight in favor of an order of probation:

(1) The criminal conduct of the defendant neither caused nor threatened serious harm.

(2) The defendant did not contemplate that his conduct would cause or threaten serious harm.

(3) The defendant acted under a strong provocation.

(4) There were substantial grounds tending to excuse or justify the criminal conduct of the defendant, though failing to establish a defense.

(5) The victim of the criminal conduct of the defendant induced or facilitated its commission.

(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained.

(7) *The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime.*

(8) The criminal conduct of the defendant was the result of circumstances unlikely to recur.

(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime.

(10) The defendant is particularly likely to respond affirmatively to probationary treatment.

(11) The confinement of the defendant would entail excessive hardship to him or his dependents.

4. 42 Pa.C.S. § 9701 *et seq.*

(12) Such other grounds as indicate the desirability of probation.

(Emphasis added).

And again the Sentencing Code provides in § 9732, relating to the contents of presentence report that:

The presentence report shall include a summary of the circumstances attending the commission of the crime, *the history of delinquency or criminality*, physical and mental condition, family situation and background, economic status, education, occupation and personal habits of the defendant, and any other matters that the person preparing the report deems relevant or that the court directs be included.

(Emphasis added).

We hold that the sentencing judge in the instant matter had not only the right but a duty to review the record of delinquency during the sentencing process, and that such review did not violate due process.

Judgment of sentence affirmed.

BECK, J., concurs in the result.